IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

TROY LEWALD,

    Plaintiff,

    vs.

PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.

*FILED ELECTRONICALLY*

CIV. ACTION NO. 2:22-CV-04625

## BRIEF IN SUPPORT OF MEDICAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COME, Defendants Wellpath, LLC (incorrectly identified as "Wellpath Holdings, LLC"), Dr. Lisa Baird, Dr. Anthony Letizio, Carol Annino, and Tiffany Wills, by and through their counsel, Weber Gallagher, file the Brief in Support of Medical Defendants' Motion to Dismiss Plaintiff's Complaint.

## I.   RELEVANT PROCEDURAL HISTORY AND STATEMENT OF THE CASE

Plaintiff, Troy Lewald, *pro se*, initiated the instant 42 U.S.C. §1983 action in the United States District Court for the Eastern District of Pennsylvania by filing a Complaint on or about November 16, 2022. (ECF. 1).

Based on the review of Mr. Lewald's Complaint, it appears that his allegations arises out of events, including a back injury, pertaining to an allegedly improper work assignment in the Food Department at SCI Phoenix. *See generally*,

Pl.'s Compl.  More specifically, Mr. Lewald alleges he has atherosclerosis, which greatly affects the major functions of his circulatory system, and degenerative disc disease, which greatly affects the major function of his nervous and skeletal systems.  *Id.*, pp. 3-4 ¶ 9.  As such, he "has been regarded as disabled since [the beginning of his incarceration]" and was previously placed on the following medical restrictions: "no lifting more than 10 pounds, no standing/sitting for more than 4 hours, no impact jobs/sports, no jumping/climbing, no excessive bending, bottom-bunk, lite-duty work assignment, no food service-handle/janitor, Not Medically Cleared For Food Services."  *Id.*, ¶¶ 9. 58, 69.   He further alleges that, due to his disability, he was hired as a Block Tutor in November 2020, maintained this job, receiving several promotions and raises, through his transfer to SCI Albion in December 2022.  *Id.*, ¶¶ 70-89, 90-1.

Mr. Lewald further alleges that his medical restrictions were deleted from Sapphire upon his transfer to SCI Phoenix.  *Id.*, ¶¶ .  As a result, he was hired to work in Food Department Services and at a lower pay grade and rate than that which he was previously promoted to.  *Id.*, ¶¶ 91-3.  As a result, Mr. Lewald attempted to rectify the issue, including by notifying several persons, submitting inmate requests, requesting different work assignments, inquiring about his previous promotions and pay increase, filing grievances, and seeking medical

assistance complaining of his work assignment and medical restrictions, but he was unsuccessful in his endeavors. *Id.*, ¶¶ 94-132.

Mr. Lewald also alleges that, on February 18, 2022, he was working when he felt a pop in his back that radiated through his arms, shoulders, and shot down his sciatic nerve. *Id.*, ¶ 133. He continues, alleging he advised Defendant Deshield of his injury and that he needed immediate medical attention but she sent him back to his unit where his additional requests for medical attention were denied by other Defendants. *Id.*

Mr. Lewald's allegations as to Medical Defendants do not begin until page 38 of his Complaint. *Id.*, p. 38, ¶ 154. More specifically, he alleges he was seen by Dr. Annino on March 3, 2022. *Id.* He alleges that, during this visit, he informed Dr. Annino of his February 18, 2022 work injury, that he was seen by another provider who prescribed medication but no such medication was ever issued, explained that he was in severe pain, the medication he purchased from commissary was ineffective, and requested diagnostic testing (i.e., a CT Scan, MRI, etc.), but Dr. Annino denied his requests. *Id.*; *see also*, *Id.*, ¶ 133.

In addition to the above allegation, Mr. Lewald raised one allegation as to Dr. Baird. More specifically, he alleges that Dr. Baird signed off on the deletion of his work restriction on October 2, 2022. *Id.*, ¶ 226. This is the extent of his allegations as to all Medical Defendants. However, from this small factual kernel,

Mr. Lewald then purports to set forth a kitchen sink's worth of causes of action, most of which are improper on their face.

Based on his allegations, Mr. Lewald asserts eleven claims against all Defendants, split somewhat into various groupings. *Id.*, pp. 58-69. With respect to Medical Defendants, Mr. Lewald raised claims of deliberate indifference, failure to protect, and cruel and unusual punishment. *Id.*, Count I, pp. 58-9. He also asserts retaliation, unreasonable seizure, negligence, "neglect of a care-dependent person", intentional infliction of emotional distress ("IIED"), and assault & battery claims. *Id.*, Count III, V, VI, pp. 63-4, 67-8. Mr. Lewald also raised claims pursuant to the 14th Amendment and Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"). *Id.*, Counts II and V, pp. 62-3, 64-6. Finally, Mr. Lewald raised various embezzlement claims against Medical Defendants. *Id.*, Count VII, pp. 69-70.

Medical Defendants now move for dismissal of any and all claims asserted against them for the reasons comprehensively set forth below.

## II.   <u>LEGAL STANDARD</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint filed by a plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 554, 555 (2007) (*citing* <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff.  However, as the Supreme Court made clear in *Twombly*, the "factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>; <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted) (A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist'").

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). <u>Goodwine v. Keller</u>, Civil Action No. 09-1592, 2012 U.S. Dist. LEXIS 140714, at *12-13 (W.D. Pa. Sep. 27, 2012).  In <u>Iqbal</u>, the Supreme Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss. <u>Id</u>. (*citing* <u>Iqbal,</u>129 S.Ct. at 1949).  Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." <u>Id</u>. (*citing* <u>Iqbal</u>, 129 S.Ct. at 1950).

Following Iqbal, a district court is now required to conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. Id. at 210-11. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief; it must "show" an entitlement to relief with its facts. Id. at 211 (citing Iqbal, 129 S.Ct. at 1949). The determination for plausibility will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 211 (quoting Iqbal, 129 S.Ct. at 1950).

"Pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." Id. at 211. That is, "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. at 210 (quoting Iqbal, 129 S.Ct. at 1948). If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed to show—that the pleader is entitled to relief. Goodwine, 2012 U.S. Dist. LEXIS at *13.

In examining a *pro se* complaint that is challenged by a motion to dismiss, the complaint is to be liberally construed. <u>Barnes v. Erie Cty. Prison Admin.</u>, No. 1:19-cv-329-SPB, 2020 U.S. Dist. LEXIS 137301, at *4 (W.D. Pa. Aug. 3, 2020) (stating that court in a *pro se* proceeding must employ less stringent standards when reviewing the complaint that it would if it were judging the work product of an attorney); *see also*, <u>Langella v. Cty. of McKean</u>, No. 09-cv-311E, 2010 U.S. Dist. LEXIS 100423, at *3-4 (W.D. Pa. Sep. 23, 2010) (citations omitted). Indeed, the Supreme Court has held that, after <u>Twombly</u>, the Court is required to hold a *pro se* complaint, "to less stringent standards than formal pleadings drafted by lawyers," however inartfully pled. <u>Id</u>. *(citing* <u>Erickson v. Pardus</u>, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (citations omitted); *see also* <u>Holley v. Dept. of Veterans Affairs</u>, 165 F.3d 244, 247-48 (3d Cir. 1999) (holding that the court must read a *pro se* complaint for substance and apply the applicable law, regardless of whether the plaintiff used the appropriate names for his or her claims).

## III.   <u>ARGUMENT</u>

### A.   **MEDICAL DEFENDANTS KIP HALLMAN, DR. ANTHONY LETIZIO, HSA TIFFANY WILLS, AND FORMER HSA JACKIE WOOD ARE ENTITLED TO DISMISSAL BECAUSE PLAINTIFF FAILED TO ALLEGE THEIR PERSONAL INVOLVEMENT**

In his Complaint, Mr. Lewald identified Mr. Hallman as a Defendant in this matter. *See* ECF No. 1, pp. 4, 58-69. In naming Mr. Hallman as a Defendant, Mr. Lewald focuses on Mr. Hallman's role as the "President of Wellpath." In addition, he specifically states that, as a president, Mr. Hallman is "responsible for overseeing the prevention, treatment and management of illness and the preservation of well-being through services offered by the medical and allied health professionals." *Id.*, p. 4, ¶10. In addition to identifying Mr. Hallman as a Defendant, Mr. Lewald sets forth numerous claims against him, though there are no facts to suggest he has any involvement, and is named only by virtue of his title. *Id.*, pp. 58-69.

Similarly, Mr. Lewald identified Dr. Letizio, HSA Wills, and HSA Wood as Defendants in this lawsuit. *See generally*, Pl.'s Compl. However, he set forth no allegations as to them in his Complaint. *Id.* Instead, he simply identified them in the caption of the case, listed them as parties in the "Parties" section of his Complaint, noting their particular title (i.e., identifying Dr. Letizio as the "Director" at SCI Phoenix, HSA Wills as the "Correction Health Care Administrator" at SCI Phoenix, and Jackie Wood as the "Health Care Administrator" at SCI Phoenix), and raised claims against them in the "Claims for Relief" section of his Complaint. *Id.*, p. 1, 9, 10, 58-69.

It is well-settled that liability under §1983 requires a showing of a defendant's "personal involvement" in the deprivation of a constitutional right. *See* Gould v. Wetzel, 547 Fed. Appx. 129, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013) (*citing* Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011)). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); Oliver v. Beard, 358 Fed. Appx. 297, 300 (3d Cir. 2009); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). "A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." Campbell v. Lane, 1990 U.S. Dist. LEXIS 14383, No. 89-C-8289 (E.D. Ill. Oct. 25, 1990) (*citing* Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983)); *see also* Duncan v. Duckworth, 644 F.2d 653, 656 (7th Cir. 1981) (Plaintiff could not recover against prison warden for alleged Eighth Amendment violations, since it was unlikely that he participated in day-to-day decisions leading to the alleged delay in plaintiff receiving treatment) and Ford v. Lane, 714 F. Supp. 310, 315-16 (N.D. Ill. 1989) (Prison warden and director of Department of Corrections could not be held responsible, based on their supervisory positions, for medical care alleged to be inadequate).

Based on the allegations set forth in his Complaint, Mr. Lewald has set forth no allegations as to the personal involvement of Mr. Hallman, Dr. Letizio, HSA

Wills, nor HSA Wood with any facts which would give rise to potential claims against them. *See generally*, Pl.'s Compl. Instead, he identified these individuals based on their roles within Wellpath and specifically SCI Phoenix in which several other Medical Defendants were employed during the relevant time period and simply relies on their role as president, medical director, and health services administrator to proceed against them. *Id.*, pp. 1, 4, 9, 10, 58-69. This is insufficient for Mr. Lewald to proceed against Mr. Hallman, Dr. Letizio, HSA Wills, and former HSA Wood. *See* <u>Hallman v. Stitt</u>, No. 1:10-2531, 2012 U.S. Dist. LEXIS 57216, at *15 (M.D. Pa. Feb. 13, 2012) ("a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. Quite the contrary, to state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States") (citations omitted).

Notwithstanding the aforementioned, Mr. Hallman cannot be held liable for the alleged actions of individuals employed by Wellpath solely because of his role as "president of the company." Likewise, Dr. Letizio, HSA Woods, and former HSA Jackie Wood cannot be held liable for the actions of other Wellpath employees because of their roles as "Medical Director" and/or "HSA" at SCI

Phoenix.  More particularly, the law is clear that a supervisory defendant in a §1983 action may not be held liable based merely on the theory of *respondeat superior*.  Rode, 845 F.2d at 1207.  Instead, the plaintiff must allege that the supervisory defendant was personally involved in the incident at hand, by either participating in the violation of a plaintiff's rights, by directing others to violate them, or, as persons in charge, having had knowledge of and acquiesced in their subordinates' violations.   Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005); Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010)(*citing* 42 U.S.C.A. § 1983); *see also* Rode v. Dellarciprete, 845 F.2d at 1207 ("Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity").

As demonstrated above, Mr. Lewald's allegations do not demonstrate that Mr. Hallman, Dr. Letizio, HSA Wills, nor HSA Wood participated in any alleged violation of his rights.  Broadwater v. Fow, 1:12-CV-1937, 2013 WL 2038806 (M.D. Pa. 2013) (internal citation omitted).  In fact, he has not set forth any allegations linking either of them to the alleged constitutional violations at issue or, in the very least, suggesting they were involved in the alleged violations of his constitutional rights.  *See generally*, Pl.'s Compl.  As such, Mr. Lewald has failed to set forth their personal involvement and cannot sustain a claim against them.

Accordingly, Mr. Lewald's deliberate indifference claim as to Mr. Hallman, HSA Wills, HSA Wood, and Dr. Letizio must be dismissed, with prejudice, because he failed to sufficiently allege their personal involvement in the alleged constitutional violations and on the grounds that neither of them can be held liable based on the theory of *respondeat superior* in a §1983 action.

## B.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM OF DELIBERATE INDIFFERENCE AS TO MEDICAL DEFENDANTS DRS. ANNINO AND BAIRD

As provided above, Mr. Lewald *has* forth facts which involve Drs. Baird and Annino, but the facts he has alleged simply do not remotely suggest any wrongdoing such that the claims should survive a *Twombly* review.  Mr. Lewald alleges that he asked Dr. Annino to prescribe him pain medication and that she instructed him to buy Motrin at the Commissary.  ECF No. 1, ¶ 154.  As to Dr. Baird, Mr. Lewald alleges that Dr. Baird "signed off" on the deletion of his work restriction on October 2.  *Id.*, ¶ 226.  Based on these allegations, Mr. Lewald raised claims of violation of his Eighth Amendment rights – namely, deliberate indifference, cruel and unusual punishment and failure to protect.[1]  *Id.*, Count I, pp. 58-61.

---

[1] To the extent that Mr. Lewald invokes the Fourteenth Amendment as a vehicle to assert a violation of the Eighth Amendment (which he has already otherwise done by way of 42 U.S.C. §1983), such  a claim is be duplicative, and runs afoul of the "explicit source" rule.  "[I]f a particular Amendment  provides an explicit textual source of constitutional protection against a particular sort of  government behavior, that Amendment, not the more generalized notion of  substantive due  process, must be the guide for analyzing these claims." Tollhouse Invs.,

The United States Supreme Court holds that the Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Rouse v. Plantier, 182 F.3d 192, 197 (*citing* Estelle v. Gamble, 429 U.S. 97 (1976)).  To set forth a cognizable claim in the context of medical treatment, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.  Estelle v. Gamble, 429 U.S. at 104; *see also* Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citation omitted); Anderson Diguglielmo, 406 Fed. Appx 574, 577 (3d. Cir. 2011).  The first showing requires the plaintiff to objectively show that the medical need was "sufficiently serious" i.e., one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).  The subjective prong requires Plaintiff to show that Defendant Saavedra "possessed 'a sufficiently culpable state of mind in denying

---

LLC v. Lau, 2017 U.S.  Dist. LEXIS 107578, at *13 n.3 (E.D. Pa. 2017), *citing* Cnty. of Sacramento v. Lewis, 523 U.S.  833, 842, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). *See also,* Wareham v. Pa. Dep't of Corr., 2013 U.S. Dist. LEXIS 122706, at *25 (W.D. Pa. 2013) ("Because the Eighth Amendment provides an explicit source of protection for deliberate indifference to serious medical needs, Plaintiff's claim is preempted by the Eighth Amendment and should not be analyzed as a substantive due process claim under the Fourteenth Amendment").

medical care' . . . greater than mere negligence." <u>Miller v. Calhoun County</u>, 408 F.3d 803, 813 (6th Cir. 2005).

Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993). Deliberate indifference also may be found where the prison official persists in a particular course of treatment "in the face of resultant pain and risk of permanent injury." <u>White v. Napoleon</u>, 897 F.2d 103, 109- 111 (3d Cir. 1990). The "deliberate indifference" standard for purposes of liability under §1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." <u>Id</u>. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 185 (3d Cir. 1993); <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 67 (3d Cir. 1993).

Moreover, mere medical malpractice or disagreement with the proper treatment of an illness cannot give rise to a violation of the Eighth Amendment. White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990); *see also* Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  Rather, a prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  In such an instance, the "official must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists and he must also draw the inference."  Id.

A mere difference in opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives also does not support a claim of cruel and unusual punishment.  *See* Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *see e.g.*, Nottingham v. Peoria, 709 F.Supp. 542, 57 (M.D. Pa. 1988) (stating that when an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist); *see also* Brown v. Borough of Chambesburg, 903 F.2d 274, 278 (3d. Cir. 1990) ('[A]'s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.'); Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).  Applying this exact standard, courts have

frequently rejected Eighth Amendment claims that are based on the level of professional care that an inmate received – particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services.  *See* Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008).

In sum, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment.  Inmates of Allegheny County Jail v. Pierce, 612 F. 2d 754, 762 (3d Cir. 1979) (*quoting* Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). Additionally, "[a] court may not substitute its own judgment for diagnosis and treatment decisions made by prison medical staff members." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); Maynard v. New Jersey, 719 F. Supp. 292, 295 (D.N.J. 1989).

Dr. Annino is nevertheless entitled to dismissal of Mr. Lewald's deliberate indifference claims because the allegations set forth in his Complaint do not rise to a level of deliberate indifference.  With respect to Dr. Annino, Mr. Lewald failed to demonstrate how she was deliberately indifferent to his medical needs, including by way of subjecting him to cruel and unusual punishment and failing to protect

him.  Per his own allegations, he was assigned to a job that did not comply with his work restrictions, he subsequently injured his back while working on February 18 2022, he was seen by CRNP Safak for his injury on February 23, and then seen by Dr. Annino for his back pain on March 3.  (ECF No. 1, ¶¶ 133, 144, 154).  He further alleges that, at the March 3, 2022 appointment, he requested diagnostic testing and pain medication, as the medication he purchased from commissary was unhelpful and he had not received the Motrin 600 mg previously prescribed by CRNP Safak.  *Id.*, ¶ 154.  However, it is of note that Mr. Lewald does not allege he requested the prescribed medication, but rather that he was taking an over-the-counter medication as an alternative.  It is also of note that the March 3, 2022 medical record detailing Mr. Lewald's visit with Dr. Annino does not support his claims – particularly, where the record indicates that he did not request diagnostic testing, but rather informed Dr. Annino that he had not received his prescribed Motrin and <u>she specifically noted that Mr. Lewald's Motrin was cancelled because he decided that he did not want to pay the $5 co-pay for the Motrin</u>.  *See* March 3, 2022 medical record, attached hereto as Exhibit "A" (emphasis added).

In light of the above, it is apparent that Mr. Lewald's allegations as to Dr. Annino amount to his displeasure and disagreement with Dr. Annino's decision not to provide additional medication free of charge.  *See* <u>Rock v. Asure</u>, No. 1:11-CV-01839, 2014 U.S. Dist. LEXIS 66568, at *29-30 (M.D. Pa. Mar. 6, 2014)

(concluding that plaintiff's deliberate indifference claim as to defendant's failure to prescribe him stronger pain medication than Tylenol #3 amounts to nothing more than a mere disagreement, especially where plaintiff failed to show that the chosen course of treatment was medically unacceptable under the circumstances, and was chosen in conscious disregard of an excessive risk to the prisoner's health) (citations and quotations omitted); Lewis v. Wexford Health Sources, Inc., No. 1:16-00088, 2019 U.S. Dist. LEXIS 50138, at *33 (W.D. Pa. Mar. 26, 2019) (stating that "[i]n other words, a particular medical treatment—while admittedly less effective—may still be constitutionally adequate if it is based on a prison physician's professional judgment, not on some improper purpose") (citations omitted); James v. Pa. Dep't of Corr., 230 F. App'x 195, 197 (3d Cir. 2007); Innis v. Wilson, 334 F. App'x 454, 456 (3d Cir. 2009).

As to Dr. Baird, Mr. Lewald alleges that "he was informed" she "preapproved" the deletion of his 5/24/2019-11/9/2022 work restriction on October 2, 2022.[2]  Id., ¶ 226.  First, while Mr. Lewald alleges that he made several individuals aware of his disabilities and work restrictions, including prior to injury, aggravation of his disabilities, etc., he has set forth no allegations that he made Dr.

---

[2] It is of note that Mr. Lewald alleges that he was informed of this on August 3, 2022. Id., ¶ 226. However, Plaintiff's medical records – an August 29, 2022 medical record and Patient Activity Restrictions Report – indicate he was informed he was not cleared for food service on August 29 and his food service restriction is active through August 26, 2022. See the August 29, 2022 medical record and Patient Activity Restrictions Report, attached hereto as Exhibits "B" and "C."

Baird aware of his disabilities and restrictions.  *See generally*, *Id.*  Additionally, Mr. Lewald does not allege that the work restriction was *actually* deleted after this date nor that he was forced to work outside of his restrictions and injured as a result.  The most he says is that someone else told him Dr. Baird had "preapproved" something, and this allegation appears essentially at the chronologic end of his factual allegations.[3]  As such, and without more, Mr. Lewald cannot sustain his deliberate indifference claim as to Dr. Baird, specifically where has not alleged that she knew of and disregarded a substantial risk of harm, or that harm actually resulted.  *See* <u>Farmer</u>, 511 U.S. at 847) (holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

---

[3]  Indeed, most of Plaintiff's Complaint consists of exhaustive descriptions of apparently mundane interactions with various staff members, interrupted with a subheading purporting to label the described events with a panoply of legalisms such as this one, chosen at random from page 37:

*- Deliberate Indifference, Failure to Protect, Equal Protection, Failure to Accommodate, Neglect of a Care-Dependent Person, Intentional Infliction of Emotional Distress -*

These subheadings appear *sixty-one times* throughout the factual recitation but the facts related after each one are often entirely benign and do not appear to correlate to these headings.  Given that Plaintiff later sets forth specific counts with actual causes of action, apparently unrelated to these subheadings, Defendants construe the Complaint to seek to state claims and that these sixty-one subheadings do not purport to set forth their own manifold causes of action every four or five paragraphs through the 250+ paragraph, 77 page Complaint.

Accordingly, Drs. Annino and Baird respectfully request that Mr. Lewald's Eighth Amendment claims as to them be dismissed with prejudice.

### C. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR A VIOLATION OF HIS EIGHTH AMENDMENT RIGHTS PURSUANT TO <u>MONELL</u> AGAINST WELLPATH, LLC

In Count I of his Complaint, Mr. Lewald also asserts a claims of deliberate indifference, failure to protect, and cruel & unusual punishment against Wellpath, which he recognizes as the "PA DOC subcontractor responsible for the medicine and health care programs." (ECF No. 1, pp. 19, 58-61). In asserting this claim, Mr. Lewald makes only conclusory allegations as to Wellpath. *Id.* Among those, was his allegations that Wellpath had a "policy of restricting, if not outright denying, follow-up care," "knowledge of a continuing pattern of culpable failures and made no attempt to remedy the deficiencies in system . . .," and "failed to create a policy requiring prisoners' files to be reviewed prior to transfer in order to avoid risk . . .." *Id.*, p. 59-61, ¶¶ 8, 13, 17.

First, to the extent that Mr. Lewald purports to assert liability as to Wellpath premised upon vicarious liability and *respondeat superior* for the actions or inactions of the medical staff at SCI Phoenix, including any named and/or unidentified Wellpath employees, Mr. Lewald's claims must fail as a matter of law because vicarious liability is not recognized under §1983 and, thus, Wellpath cannot be vicariously liable for the alleged unconstitutional acts of its

employees.  *See* Lewis v. Wetzel, 2015 U.S. Dist. LEXIS 170283, at *40 (M.D. Pa. 2015) (Kane, J.) (*citing* Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989)). (*emphasis* added).

Furthermore, in Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 689 (1978), the United States Supreme Court held that although municipalities and other local governmental bodies are 'persons' within the meaning of [S]ection 1983, a municipality may not be held vicariously liable under section 1983 solely because of the existence of an employer-employee relationship with a tortfeasor." Patterson v. Armstrong Cty. Children & Youth Servs., 141 F. Supp. 2d 512, 525 (W.D. Pa. 2001).  "Monell applies not only to municipalities, but also extends to private organizations faced with Section 1983 liability for actions under color of state law." Kauffman v. Pa. Soc'y for the Prevention of Cruelty to Animals, 766 F. Supp. 2d 555, 561-62 (E.D. Pa. 2011); *see also*, Regan v. Upper Darby Twp., 363 F. App'x 917, 922 (3d Cir. 2010) ("[A] city, municipality, or private entity that is a state actor may not be held vicariously liable under §1983 for the actions of its agents because there is no *respondeat superior* theory of municipal liability."); Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (because *respondeat superior* or vicarious liability cannot be a basis for liability under 42 U.S.C. §1983, a corporation under contract with the state cannot be held liable for the

acts of its employees and agents under those theories); <u>Dempsey v. Bucknell Univ.</u>, 2012 U.S. Dist. LEXIS 62043 at *31 (M.D. Pa. 2012).

As such, liability of such entities may not rest on *respondeat superior*, but rather must be based upon a governmental policy, practice, or custom that caused the injury. <u>Monell</u>, 486 U.S. at 690-94; *see also*, <u>Thomas v. Zinkel</u>, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001). Therefore, in order to state a §1983 claim against Wellpath, "the plaintiff must show that the corporation, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.'" <u>Roach v. SCI Graterford</u>, 398 F. Supp. 2d 379, 388 (E.D. Pa. 2003) (*quoting* <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 725 (3d Cir. 1989)); <u>Baez v. Falor</u>, 2012 U.S. Dist. LEXIS 138574, *135, 2012 WL 4356768 (W.D. Pa. 2012). Consequently, Mr. Lewald must specifically identify a policy, custom or practice on the part of Wellpath that allegedly violated his constitutional rights. <u>McTernan v. City of York, Pa.</u>, 564 F.3d 636, 658 (3d Cir. 2009).

Mr. Lewald's allegations of "policies," are vague and conclusory. He has not set forth any allegations of the particular policy, including the identification of Wellpath employees who failed to provide follow-up care to him. Based on the foregoing, Mr. Lewald has completely failed to set forth sufficient allegations of policy, custom or practice that resulted in the alleged constitutional violation. *See*

*generally*, Pl.'s Compl. Accordingly, Wellpath, LLC is entitled to dismissal of Mr. Lewald's Eighth Amendment deliberate indifference claim with prejudice.

### D. PLAINTIFF HAS FAILED TO STATE A COGNIZABLE CLAIM OF RETALIATION AGAINST MEDICAL DEFENDANTS

To prevail on a retaliation claim, a prisoner-plaintiff must make a three-part showing. First, as a threshold matter, the prisoner must "prove that the conduct which led to the alleged retaliation was constitutionally protected." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (citations omitted). Next, the prisoner "must show that he suffered some 'adverse action' at the hands of the prison officials." Rauser, 241 F.3d at 333 (citation omitted). The prisoner satisfies the adverse action requirement by "demonstrating that the action 'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" *Id.* (*quoting* Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).

Finally, the prisoner must demonstrate "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Id. A causal link is established when the "constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [the prisoner]." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002) (*citing* Rauser, 241 F.3d at 333). Plaintiff must establish: "(1) an unusually suggestive proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of

antagonism coupled with timing to establish a causal link." DeFranco v. Wolfe, 387 Fed. Appx. 147, 154 (3d Cir. 2010).  If neither is proven, the prisoner "must show that, from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*

In the instant matter, Mr. Lewald alleges that Co-Defendants retaliated against him as punishment for him exercising his right to file grievances.  (ECF No. 1, Count IV, p. 64).  He continues, alleging that Medical Defendants, and several other Defendants, are "personally responsible for violation of rights and supervisors liable for failure to supervise, lack of training and perpetuating a pattern of abuses resulting in continual violation of constitutional torts in violation of the 1st Amendment of the United States Constitution."  Without delving into the actual deficiencies of Mr. Lewald's claim, Medical Defendants will simply argue that they are entitled to dismissal of this claim on the basis that Mr. Lewald has not alleged that any of the Medical Defendants retaliated against him for filing grievances.  *See generally*, Pl.'s Compl; *see also*, *Id.*, Count IV, p. 64.  Further, as detailed throughout his Complaint, Mr. Lewald did not direct any of the relevant grievances at Medical Defendants. *Id.*, ¶¶ 96, 107, 108, 117, 118, 120, 134, 138. Finally, Medical Defendants were never supervisors of the Co-Defendants, including during the relevant time period, but rather colleagues who worked within the same prison as them.

Accordingly, Plaintiff's retaliation claims as to Medical Defendants must be dismissed with prejudice.

**E.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AS A MATTER OF LAW AGAINST MEDICAL DEFENDANTS UNDER THE AMERICANS WITH DISABILITIES ACT AND §504 OF THE REHABILITATION ACT BECAUSE MEDICAL DEFENDANTS CANNOT BE SUED UNDER THOSE STATUTES.**

In his Complaint, Mr. Lewald stated he is seeking an injunction and damages pursuant to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").[4] (ECF No. 1, p. 2, ¶ 1). In addition, Mr. Lewald raised ADA and RA claims in Count V of his Complaint. *Id.*, Count V, pp. 64-6. More specifically, Mr. Lewald alleged that Medical Defendants failed to provide reasonable accommodations as to the work, psychology, and medical programs. *Id.* According to Mr. Lewald, these accommodations included the following: failure to accommodate work program of a public entity and provide medically appropriate work; failure to provide Plaintiff with any mental health program accommodations; failure to provide psychology intake screening examination within 14 days of transfer and failure to follow-up with an inmate known to be disabled; failure to provide qualified mental health staff appropriate licensed and

---

[4] Plaintiff also raised claims for an alleged violations of his rights under the Pennsylvania Human Relations Act ("PHRA") and the Protection and Advocacy for Individuals with Mental Illness Act ("PAMII"), which will be addressed in another section.

trained in sufficient number to meet the needs of the prison population; failure to train correctional staff to deal with predictable problems of mentally ill and disabled prisoners; and denial of request to resolve missing work restrictions, treating him with hostility, claiming he was harassing and wasting time, being dismissive, etc. *Id.*, Count V, pp. 64-6, ¶¶ 1, 4, 6-10.  As such, Medical Defendants now move for dismissal of Mr. Lewald's ADA and RA claims – namely because they are not among the class of defendants against whom such statutory claims can be brought.[5]

> Title II of the ADA provides, in pertinent part:
>
> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. §12132; Doe v. County of Centre, 242 F.3d 437, 446 (3d Cir. 2001); Spencer v. Courtier, 552 Fed. Appx. 121, 125 (3d Cir. 2014); Brown v. Deparlos, 492 Fed. Appx. 211, 215 (3d Cir. 2012).  "Similarly, §504 of the Rehabilitation Act, 29 U.S.C. §794, prohibits discrimination on the basis of disability by

---

[5] Medical Defendants address Plaintiff's ADA and claims together, as the legal basis for them are the same and the Courts usually consider claims together.  *See* Bowers v. NCAA, 475 F.3d 524, 535 n.12 (3d Cir. 2007), *citing* McDonald v. Pennsylvania, 62 F.3d 92, 94 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same")

programs that receive federal funds." P.P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009).[6]

The class of defendants against whom a claim may be brought for a violation of either Title II of the ADA or §504 of the RA is limited. "The Court of Appeals for the Third Circuit has found that there is generally no individual liability under the ADA." Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002) ("individuals are not liable under Titles I and II of the ADA"). "An exception exists when an individual is sued for prospective injunctive relief." Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002); Mohney v. Pennsylvania, 809 F. Supp. 2d 384, 392 (W.D. Pa. 2011). Similarly, unless an individual defendant is a *direct* recipient of federal financial aid, such defendant cannot be liable for claims under the Rehabilitation Act. Haybarger v. Lawrence Cty. Adult Prob. & Parole, 2007 U.S. Dist. LEXIS 18314, at *18 (W.D. Pa. 2007); Finley v. Pa. Dep't of Corr., 2015 WL 1967262, 2015 U.S. Dist. LEXIS 56939, at *19-20 (M.D. Pa. 2015) (""The United States Court of Appeals for the Third Circuit has stated, in general terms, that individual liability is not available under the Rehabilitation Act. . . . Courts within this circuit have held that individuals

---

[6] Medical Defendants briefly note additionally that "a plaintiff asserting a claim for the violation of Section 504 of the Rehabilitation Act must establish that the entity in question receives federal financial assistance." Taylor v. Altoona Area Sch. Dist., 513 F. Supp. 2d 540, 558 (W.D. Pa. 2007) (*citing* Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002). Though the burden is not upon Medical Defendants to prove, they submit that neither individual Medical Defendants nor Wellpath receive federal financial assistance.

cannot be held liable under the Rehabilitation Act," *citing* Taylor v. Altoona Area Sch. Dist., 513 F.Supp.2d 540, 556 (W.D. Pa. 2007)).

None of the Medical Defendants are cognizable defendants for any private cause of action under either Title II of the Americans with Disabilities Act nor §504 of the Rehabilitation Act. Accordingly, Mr. Lewald's ADA and RA claims against them are improper and must be dismissed with prejudice.

**F. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM AS A MATTER OF LAW AGAINST MEDICAL DEFENDANTS UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT AND THE PROTECTION AND ADVOCACY FOR INDIVIDUALS WITH MENTAL ILLNESS ACT ("PAMII")**

In addition to his RA and ADA claims, Mr. Lewald asserts he is seeking an injunction and damages for an alleged violation of his rights under the Pennsylvania Human Relations Act ("PHRA") and the Protection and Advocacy for Individuals with Mental Illness Act ("PAMII"). (ECF No. 1, p. 2, ¶ 1). Medical Defendants now move for dismissal of Mr. Lewald's PHRA claims on the grounds that they are not proper parties for purposes of his claims.

The Pennsylvania Human Relations Commission ("PHRC") enforces state laws that prohibit discrimination and specifically the PHRA which covers discrimination in employment, housing, commercial property, education, and public accommodations. 43 P.S. §955(e). Defendants cannot conceive of any way in which Plaintiff could properly state a cause of action against them under the

PHRA, which often applies to employment relationships or public housing accommodations, none of which pertain to any fact in this case. The second statute referenced by Plaintiff is the Protection and Advocacy for Individuals with Mental Illness Act ("PAMII"), which is a federal statute codified at 42 U.S.C.S. §10801, *et seq.* Neither of these statutes give Plaintiff any viable cause of action.

Defendants will refrain from undertaking any detailed analysis of the elements required to state any one of a number of potential claims related to the PHRA, simply because the notion that any such claim might exist between Mr. Lewald and Medical Defendants is fundamentally absurd and doing so would substantially extend what is already a long brief. Plaintiff was not an employee of Defendants, and Defendants do not supply public housing. The PHRA has about as much potential to give rise to a cause of action on these facts as might a federal highway funding bill. PAMII can be dealt with still more succinctly and directly, however, because that statute does not create any private right of action. Manley v. Augusty, 2001 U.S. Dist. LEXIS 11516, at *26 (E.D. Pa. 2001) ("It is well settled that this statute does not create a private right of action;" "Plaintiff may not pursue a private cause of action against the Clinic under the PAMIIA and her claim will be dismissed").

Accordingly, Medical Defendants are entitled to dismissal of Plaintiff's PHRA and PAMII claims.

**G.     PLAINTIFF HAS FAILED TO STATE CLAIMS FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST MEDICAL DEFENDANTS.**

In Count VI of his Complaint, Mr. Lewald also asserted a state tort claim for intentional infliction of emotional distress ("IIED").  ECF No. 1, pp. 67-8.

To prevail on an IIED claim, a plaintiff must allege: (1) extreme and outrageous conduct; (2) intentional or reckless conduct; (3) conduct caused the emotional distress; and (4) severe emotional distress.  *See, e.g.,* Carson v. City of Philadelphia, 574 A.2d 1184 (Pa. Commw. Ct. 1990); Smith v. Washington Area Humane Soc'y, No. 2:19-cv-1672, 2020 WL 6364762, *8 (W.D. Pa. Oct. 29, 2020) (citation omitted).  As a threshold matter, a court must first determine, as a matter of law, whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct.  Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979).  Conduct sufficient to support an IIED claim has been defined by the Pennsylvania appellate courts as "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Reedy v. Evanson, 615 F.3d 197, 231-32 (3d. Cir. 2010).

Additionally, and more importantly, "a plaintiff 'must suffer some type of resulting physical harm due to the defendant's outrageous conduct.'"  Richardson v. Barbour, No. 2:18-cv-1758, 2020 WL 4815829, *14 (E.D. Pa. Aug. 19, 2020)

(*quoting* <u>Reedy v. Evanson</u>, 615 F.3d at 231).   In other words, the plaintiff must experience emotion distress and "allege *physical manifestations of the emotional distress*."   <u>Id</u>. (*citing* <u>Reeves v. Middletown Athletic Ass'n</u>, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004)) (emphasis added).  "It is not enough for a plaintiff to generically plead the elements of a claim for IIED, but rather, sufficient detail must be asserted to make out a plausible claim."   <u>Id</u>. (*quoting* <u>M.S. ex rel. Hall v. Susquehanna Twp. School Dist.</u>, 43 F.Supp.3d 412, 430-31 (M.D. Pa. 2014) ("Although Plaintiffs allege M.S. suffered 'physical harm' as a result of the emotional distress, such a general, non-specific averment has been found insufficient to survive motions to dismiss.") and *citing* <u>Dobson v. Milton Hershey School</u>, 356 F.Supp.3d 428, 439-40 (M.D. Pa. 2018) (holding plaintiff's bald allegations of "physical harm" and "physical manifestations of emotional distress" were not enough, without more, to set forth a plausible IIED claim)); *see also* <u>Hoy v. Angelone</u>, 720 A.2d 745, 755 (Pa. 1998) (identifying IIED as a "most limited" tort); <u>Gomez v. Markley</u>, No. 2:07-cv-868, 2011 WL 112886, *1 (W.D. Pa. Jan. 13, 2011) ("in order to state a claim for [IIED] under Pennsylvania Law, a plaintiff must establish physical injury or harm…at the very least, existence of the alleged emotional distress must be supported by competent medical evidence.") (internal citations and quotation omitted).

Here, Mr. Lewald has failed to state a claim for intentional infliction of emotional distress against Medical Defendants. *See generally*, Pl.'s Compl. More particularly, he failed to allege, demonstrate, or even describe, any intentional outrageous or extreme conduct engaged in by any of the individually named Medical Defendants that caused him emotional distress. Likewise, Mr. Lewald failed to allege and/or set forth any allegations of emotional distress he experienced as a result of Medical Defendants' alleged conduct. Finally, he failed to allege that he experienced any physical injuries, i.e., physical manifestations, as a result of any emotional distress he experienced due to Medical Defendants' alleged conduct. Because Mr. Lewald has failed to sufficiently plead facts to support his IIED claim against Medical Defendants, his claim fails as a matter of law.

Accordingly, Medical Defendants are entitled to dismissal of Mr. Lewald's claims for intentional infliction of emotional distress with prejudice.

## H. PLAINTIFF FAILED TO ASSERT MEDICAL DEFENDANTS INVOLVMENT IN THE ALLEGED USE OF EXCESSIVE FORCE/ASSAULT AND BATTERY

Medical Defendants also move for dismissal of Mr. Lewald's excessive force/assault and battery claims raised in Count VI of his Complaint. (ECF No. 1, pp. 67-8). Medical Defendants now move for dismissal of Mr. Lewald's excessive force/assault and battery claims raised in Count VI of his Complaint on the

grounds that he has not set forth any allegations to support his claim, and there is otherwise no evidence of record that it is directly liable for the same.

To succeed on a claim of excessive force under the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable," meaning, 'that the actions [were] not rationally related to a legitimate nonpunitive government.'" Ross v. Smith, No. 1:21-cv-01994, 2021 U.S. Dist. LEXIS 232300, at *17 (M.D. Pa. Dec. 3, 2021) (citing Kingsley v. Hendrickson, 576 U.S. 389, 396-97, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015) and Robinson v. Danberg, 673 F. App'x 205, 209 (3d Cir. 2016)). Excessive force requires a showing that force was used maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 7 (1992). "[O]bjective reasonableness turns on the facts and circumstances of each particular case," and appropriate considerations include: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Kingsley, 576 U.S. at 397 (internal quotation omitted). Special consideration must also be given to the "legitimate interests that stem from the government's need to manage the facility in which

the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." Id. (quoting Bell v. Wolfish, 441 U.S. 520, 540, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)) (alterations and internal quotation marks omitted).

Medical Defendants are entitled to dismissal of Mr. Lewald's use of excessive force/assault claim because Mr. Lewald alleges no facts whatsoever suggesting that Medical Defendants engaged in acts of excessive force upon him. Rather, the Complaint simply brings all counts against all Defendants engaged in excessive force and assault and battery. However, looking at the facts pled, Mr. Lewald has not alleged any personal involvement of Medical Defendants as to this alleged violation of his constitutional right. More specifically, Mr. Lewald has not set forth any allegations as to Medical Defendants' personal involvement with respect to his claim use of excessive force/assault and battery claim. *See generally*, Pl.'s Compl. "A defendant in a civil rights action must have personal involvement in the alleged wrongdoing…Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988); Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). "Alleging a mere hypothesis that an individual defendant had personal knowledge of or

involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement." Gannaway v. Prime Care Medical Inc., 150 F.Supp.3d 511, 526-27 (E.D. Pa. 2015) (citing Rode, 845 F.2d at 1208).

Accordingly, Medical Defendants are entitled to dismissal of Mr. Lewald's excessive force/assault and battery claims, with prejudice.

I.   **PLAINTIFF HAS FAILED TO STATE VIABLE CLAIMS AGAINST MEDICAL DEFENDANTS FOR VIOLATIONS OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.**

In Count II of his Complaint, Mr. Lewald alleges Medical Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 1, pp. 62-3).  Medical Defendants now move for dismissal of this claim.

The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," New York City Transit Auth. v. Beazer, 440 U.S. 568, 587, 99 S.Ct. 1355, 1367, 59 L.Ed.2d 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); Evans v. Wayne County Corr. Facility, 2012 U.S. Dist. LEXIS 50263, 37

(M.D. Pa. 2012).  Under a "class of one" theory, plaintiff establishes a violation of the Equal Protection clause when he shows he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Further, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). In order to proceed against the defendants in their individual capacities, a plaintiff must allege "personal direction or . . . actual knowledge and acquiescence" of constitutional violations.  Id.

Mr. Lewald's Complaint fails to establish how he was treated differently than similarly situated individuals.  Instead, his Complaint shows Medical Defendants, namely Dr. Annino, provided care for his medical complaints and he does not agree with the care she provided.  Further, Mr. Lewald's Complaint fails to aver that Medical Defendants were personally involved in the alleged wrongdoings that are true focus of his Complaint (i.e., the deletion of his work restrictions).

Accordingly, Mr. Lewald's claim of a violation of the Equal Protection Clause of the Fourteenth Amendment should be dismissed.

### J.    PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR EMBEZZLEMENT

Mr. Lewald also brings a claim for embezzlement against Medical Defendants Hallman, Wellpath, Dr. Letizio, and HSA Wood. *See*, Pl.'s Compl., p. 69. He specifically alleges:

> Defendants PADOC, WELLPATH, Varner, Moore, Sorber, Ferguson, J. Terra, R.Terra, Biser- Sipple, Litizio, Wood, Huner, Savage, Delliponti, Muick, Noel, Hallman embezzled 67% of Plaintiff's monthly salary upon initial denial of health care, 5 day delay in to inadequate medical care, denial again to reasonable medical care, 19 day delay to inadequate prescribed medicine, and erroneous charges against Plaintiff to resolve PADOC induced issues was not justified by a penological need except for their own profit in violation of PADOC policy and constituted embezzlement in connection with health care, misapplication of entrusted property and financial exploitation of a care-depended person in violation Title 18 of the United States Code Service.

*Id.* To this end, Medical Defendants specifically deny these allegations as completely false. As provided above, Wellpath is a corporate entity contracted by the DOC to provide medical services to inmates incarcerated throughout the DOC. As such, neither Wellpath nor its employees, including and especially Mr. Hallman, have any involvement in the employment of prisoners within the DOC, except to the extent the Wellpath providers request and/or enter restrictions, including work restrictions, for inmates. Further, even if Medical Defendants were more involved in the employment of prisoners within the DOC, there is no private cause of action for embezzlement. *See* Lawton v.

<u>Wells Fargo Bank, N.A.</u>, No. 22-3294, 2023 U.S. Dist. LEXIS 44181, at *9 (E.D. Pa. Mar. 16, 2023), *citing* <u>Boyd v. Wilmington Trust Co.</u>, 630 F. Supp. 2d 379, 384-85 (D. Del. 2009).

Accordingly, Mr. Lewald's embezzlement claim must be dismissed with prejudice.

### K.   DISMISSAL MUST BE GRANTED IN FAVOR OF MEDICAL DEFENDANTS AS TO PLAINTIFF'S MEDICAL MALPRACTICE/NEGLIGENCE CLAIM BECAUSE HE FAILED TO FILE THE REQUISITE CERTIFICATE OF MERIT PURUSANT TO Pa. R.C.P. 1042.3(a)(1).

In addition, Mr. Lewald also brings a negligence claim against all of the Medical Defendants, except Mr. Hallman.  (ECF No. 1, Count I, pp. 67-8).  Medical Defendants now move to dismiss Mr. Lewald's negligence claim.

In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." <u>Toogood v. Owen J. Rogal, D.D.S., P.C.</u>, 824 A.2d 1140, 1145 (Pa. 2003) (citation omitted).  To prevail in a medical negligence action, a plaintiff must establish: (1) a duty owed by the physician to the patient, (2) a breach of that duty by the physician, (3) that the breach was the proximate cause of the harm suffered, and (4) the damages suffered were a direct result of the harm.  <u>Id.</u> at 1145; *see also* <u>Northwestern Mut. Life Ins.</u>

Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005) (*citing* In re TMI, 67 F.3d 1103, 1117 (3d Cir. 1995)).  Because the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons, a medical negligence plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation, and the extent of the injury.  Toogood, 824 A.2d at 1145.

Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff alleging professional negligence to file a certificate of merit within 60 days of filing the complaint. Pa. R. Civ. P. 1042.3.  The certificate must include one of the following: a written attestation by "an appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell outside acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed.  Pa. R. Civ. P. 1042.3(a)(1)-(3).  Failure to file a certificate of merit is fatal to a plaintiff's claim. Pa. R. Civ. P. 1042.7.

The requirements of Rule 1042.3(a) are deemed substantive in nature and, therefore, federal courts in Pennsylvania apply this prerequisite when assessing the merits of a medical malpractice claim.  Liggon-Reading v. Estate of Sugarman,

659 F.3d 258 (3d Cir. 2011); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x

938, 944 (3d Cir. 2007); *see also* Erie R.R. v. Thompkins, 304 U.S. 64, 58 S. Ct.

817, 82 L. Ed. 1188 (1983) ("The Third Circuit has held that Rule 1042.3 is

substantive law that must be applied by federal courts").  This requirement applies

with equal force to counseled complaints and to *pro se* medical malpractice actions

brought under state law. *See* Hodge v. Dep't of Justice, 372 Fed. Appx. 264, 267

(3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for

failure to file a certificate of merit).

Additionally, "one of Pennsylvania's conditions precedent to dismissing an

action for failure to comply with this requirement, fair notice to a plaintiff, is also

substantive law," Schmigel v. Uchal, 800 F.3d 113, 115 (3d Cir. 2015), and,

therefore, also must be applied in federal court. Id. at 124.  Under these notice

provisions, a Pennsylvania malpractice defendant may dismiss an action when

there is no pending motion for determination that a certificate of merit is necessary

or seeking to extend the time to file a certificate of merit; (2) a certificate of merit

was not filed before dismissal was sought; (3) the defendant provides proof that he

or she served notice of the deficiency upon the plaintiff; and (4) thirty (30) days

have elapsed since defendant served plaintiff with the notice of the deficient and

the defendant's attempt to terminate the action.  Id. at 118 (citing Pa.R.C.P. No.

1042.7(a)(1)-(4)).

In the present action, Mr. Lewald filed his Complaint, in which he asserts several claims against Medical Defendants, including a claim for negligence, on November 16.  As such, Mr. Lewald was required to file a Certificate of Merit within sixty (60) days of the filing of his Complaint in which he has alleged that Medical Defendants were negligent for failing to provide medical care, accommodations, etc.  *See* Peters v. Brown, 2017 WL 1753523 , at *2 (W.D. Pa. April 13, 2017).  However, he has failed to file the requisite Certificate of Merit.[7] Accordingly, Mr. Lewald's claim for negligence must be dismissed.

## IV.  CONCLUSION

Based on the foregoing, Medical Defendants, Wellpath, Mr. Hallman, Dr. Letizio, Dr. Annino, HSA Wills, Dr. Baird, and HSA Wood,  respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiff's Complaint.

---

[7] As of the date of filing this Medical Defendants have not yet provided the 30-day notice required by PA Rule 1042.6, and is doing so presently, as that 30-day period will easily have elapsed before the Court makes a ruling on their Motion.  To the extent the Court should conclude that this aspect of Defendants' Motion cannot be brought *before* those 30 days have lapsed, Defendants can raise this argument by alternative means through a motion for judgment on the pleadings or within a motion for summary judgment when that issue of timing does not complicate the Court's consideration of it.

Respectfully submitted,

WEBER GALLAGHER SIMPSON STAPLETON
FIRES & NEWBY LLP

By: \_\_/s/ Keanna A. Seabrooks\_\_\_\_
        Keanna A. Seabrooks, Esquire
        kseabrooks@wglaw.com
        PA324714

        Samuel H. Foreman, Esquire
        sforeman@wglaw.com
        PA77096

        Four PPG Place, 5th Floor
        Pittsburgh, PA 15222
        T: (412) 281-4541
        F: (412) 281-4547

## <u>CERTIFICATE OF SERVICE</u>

I, Keanna Seabrooks, Esquire, hereby certify that on this date a true and correct copy of the foregoing **<u>BRIEF IN SUPPORT OF MEDICAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>** was served upon all counsel of record via CM/ECF and to the following:

*By U.S. Mail only to:*

Troy Lewald, NS-1261
Smart Communications/ PA-DOC
SCI-Albion
P.O. Box 33028
St. Petersburg, FL  33733

*Pro Se Plaintiff*


                                    /s/ Keanna Seabrooks
                                    Keanna Seabrooks, Esquire

Dated:            June 30, 2023