IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY LEWALD,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS "PADOC", et al.,** | : | |
| *Defendants*. | : | **NO. 22-cv-04625** |

MEMORANDUM

**KENNEY, J.**                                                                                                           **NOVEMBER 29, 2023**

### I.   INTRODUCTION

Plaintiff Troy Lewald, a prisoner proceeding *pro se*, filed a sprawling complaint, launching over a dozen claims against dozens of individual and institutional defendants. Lewald's complaint arises from three central allegations against the defendants: (1) they failed to provide proper medical care; (2) they provided him with a work assignment in prison that he was not physically able to complete; and (3) they improperly reduced his pay rate. Three sets of defendants moved to dismiss the complaint: a set of 36 individuals and the Pennsylvania Department of Corrections (the "Commonwealth Defendants"); four medical professionals and Wellpath LLC (the "Medical Defendants") and Courtney Cione, a mental health professional at the prison.

### II.   BACKGROUND AND PROCEDURAL HISTORY

Lewald was incarcerated at SCI-Phoenix beginning in January 2019. ECF No. 1 ¶ 57. Lewald alleges that he manages a host of medical conditions, including atherosclerosis and degenerative disc disease, as well as posttraumatic stress disorder (PTSD), obsessive compulsive disorder (OCD), manic-depressive disorder, and depression, among other mental health issues. *Id.*

1

¶ 9. Lewald states that there are several medical restrictions in his file, including that he should not have to lift more than 10 pounds, stand or sit for more than four hours, and that he is only cleared for lite-duty work. *Id.* ¶ 69. However, Lewald claims that these restrictions were deleted from his file, without any notice to him. *Id.* ¶ 80. When transferring facilities, Lewald requested a lite-duty work assignment, citing his medical restrictions. *Id.* ¶¶ 89, 92. However, Lewald was assigned a heavy-duty job in Food Services. *Id.* ¶ 93. Lewald attempted to explain to various prison officials that he should not have been assigned a heavy-duty job, but they did not assist him. *Id.* ¶¶ 94-104. Lewald filed grievances in an attempt to resolve the issue. *Id.* ¶¶ 107-118. Lewald also raised the issue of his medical restrictions with his supervisor in Food Services, Shanda Deshield. *Id.* ¶ 119. Ms. Deshield told Lewald to go back to his housing unit. *Id.* Lewald continued to file grievances and medical sick call requests in an effort to have his medical restrictions reinstated, but to no avail. *Id.* ¶¶ 120-32.

After working in Food Services for approximately a month, Lewald was carrying food trays when he "felt a pop in his back and dropped the stack of trays he was carrying as the pain radiated through his arms, shoulders, and shooting down his sciatic nerve." *Id.* ¶ 133. Lewald requested emergency medical attention, but Ms. Deshield told him to go back to his cell. *Id.* Once back at his cell, Lewald informed a corrections officer, Ms. Grennon, and his unit manager, Ms. Strenkoski, of his injury. *Id.* Neither sent Lewald to receive emergency medical care, and both informed him that he would have to file a sick call. *Id.* Five days later, Lewald was seen by a prison medical official who examined him and prescribed with 600 milligrams of Motrin three times a day, bottom bunk status for six months, and three weeks of no work. *Id.* ¶ 144. Lewald was then released from his Food Services job. *Id.* ¶ 147. Lewald was later seen by Dr. Carol Annino, and told her that he was never "issued" any medication, that he only had a limited amount of 200

milligram pills of Motrin, and requested additional diagnostic tests. *Id.* ¶ 154. Dr. Annino responded that Lewald could buy Motrin from commissary. *Id.* Lewald continued to see prison medical officials, with one telling him that she would "fix" the prescription for 600 milligrams of Motrin, prescribed Baclofen, and would look into a medical mattress license. *Id.* ¶ 164. In August 2022, Lewald was reviewing his medical records with a records specialist and saw a line next to his medical restrictions reading "Delete Signoff Approval by Lisa Baird dated 10/20/22." *Id.* ¶ 226.

While addressing his work assignment in Food Services, Lewald also raised several complaints about his pay. On December 2, 2021, Lewald was promoted and was to receive a pay rate of $0.42/hour. *Id.* ¶ 83. However, when Lewald spoke with his unit counselor a few weeks later, he indicated that Lewald's pay rate was only to be $0.38/hour, and he would need to contact Inmate Employment. *Id.* ¶ 88. Lewald filed a request with Inmate Employment and was told that his pay rate was to remain $0.38/hour. *Id.* ¶¶ 89, 91. Lewald then filed grievances complaining that his pay rate was lower than the $0.42/hour he believed he was entitled to. *Id.* ¶¶ 107-08, 155, 168-69, 176. Lewald also complained of charges on his account for medical expenses. *Id.* ¶ 175.

### III. STANDARD OF REVIEW

In a deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "accept[s] the factual allegations in the complaint as true, draw[s] all reasonable inferences in favor of the plaintiff, and assess[es] whether the complaint and the exhibits attached to it contain enough facts to state a claim to relief that is plausible on its face." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (internal quotation marks and citations omitted). Nevertheless, the Court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal quotation marks and citation omitted). "When presented with a pro se litigant, we

have a special obligation to construe his complaint liberally." *Higgs v. Atty. Gen.,* 655 F.3d 333, 339 (3d Cir. 2011) (internal quotation marks and citations omitted).

## IV. DISCUSSION

A claim under 42 U.S.C. § 1983 is a means "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). The statute "imposes civil liability upon any person who, acting under color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or the laws of the United States." *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). A § 1983 claim is a vehicle that provides a "remedy for the violation of a federal constitutional or statutory right." *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000).

Civil rights claims under § 1983 can only impose liability on individuals who "played an 'affirmative part' in the alleged misconduct, either through personal direction of or actual knowledge and acquiescence in the deprivation." *Gannaway v. PrimeCare Med., Inc.*, 150 F.Supp.3d 511, 526 (E.D. Pa. 2015) (citing *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir. 1986) (additional citation omitted). Such individuals must have "personal involvement" in the violations, which "requires particular allegations of personal direction or of actual knowledge and acquiescence." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (internal quotation marks and citation omitted). To succeed on a § 1983 claim, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Supervisory authority alone is generally "insufficient to establish the personal involvement necessary" for a § 1983 claim. *Flowers v. Francoise*, No. 22-1077, 2022 WL 2447899, at *2 (3d Cir. July 6, 2022) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988)). A

municipality's agency or organization, such as the Pennsylvania Department of Corrections ("PADOC"), can be held liable only for a constitutional injury that arose from "execution of a government's policy or custom." *Dixon v. Pa. Dep't of Corr.*, No. 3:17-cv-1827, 2022 WL 3330142, at *7 (M.D. Pa. Aug. 11, 2022) (quoting *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007) (additional citation omitted). A private corporation that contracts with the state to provide services must make a similar showing, that it "established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm." *Dixon*, 2022 WL 3330142, at *8 (citing *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). This can be established when "a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict," or where a custom is "so permanent and well-settled as to virtually constitute law." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citations omitted).

Lewald's Complaint boils down to three primary allegations. First, that Defendants mistreated him in ignoring and failing to properly treat his injuries, causing him severe pain. Second, that Defendants deleted work restrictions in his electronic file, that led to him being assigned the Food Services position that exacerbated his injuries. Third, that Defendants improperly reduced his wages.

### a. CONSTITUTIONAL CLAIMS

Lewald fails to plead personal involvement of nearly every defendant in the alleged denial of his constitutional rights. While Lewald lists many names throughout his complaint, he only alleges personal involvement by Dr. Annino and Dr. Baird with regard to his medical treatment.[1] The other individual Defendants are either not named at all in the body of the Complaint, or appear

---

[1] Dr. Annino provided some of Lewald's medical treatment. ECF No. 1 ¶ 154. Dr. Baird is alleged to have deleted the work restrictions in Lewald's electronic file. *Id.* ¶ 226.

sporadically either assisting Lewald or at worst exhibiting impolite behavior.[2] *See, e.g.*, ECF No. 1 ¶ 94 (Defendant Stimmel declining to assist Lewald as outside his scope of responsibility); ¶ 111 (Defendant Delliponti responding to one of Lewald's grievances); ¶ 119 (Defendant Deshield expressing confusion when Lewald told her he is a lite-duty worker and excusing him from work). However, despite Lewald's "alleg[ations] that these defendants had knowledge of his medical treatment because they received and reviewed his medical records and grievances, such actions do not establish personal involvement." *Plummer v. Wellpath*, No. 23-1637, 2023 WL 4181620, at *2 (3d Cir. June 26, 2023). Here, "[o]ther than being named Defendants, there are no specific factual allegations that they had any personal involvement in the purported violations of Plaintiff's constitutional rights under the Eighth Amendment." *Brown v. Wetzel*, No. 13-5469, 2014 WL 5493244, at *3 (E.D. Pa. Oct. 29, 2014). Therefore, all constitutional claims against all individual defendants, other than Drs. Annino and Baird, are dismissed.[3] The constitutional supervisory liability claims against Wellpath and PADOC are similarly dismissed, since Lewald does not allege any policy as to medical treatment or deletion of records that is either an official proclamation or a permanent and well-settled custom, beyond conclusory assertions in his response brief.[4] *See* ECF No. 96 at 26-29. *See also Lewis v. Wetzel*, 153 F. Supp.3d 678, 696 (M.D. Pa. 2015) ("conclusory, vague and speculative allegation[s] of custom, policy or practice are insufficient under *Twombly* and *Iqbal*.").

i. **DELIBERATE INDIFFERENCE**

---

[2] Defendant Tara Jackson, who is the subject of several of Lewald's complaints, has been terminated from the case. *See* ECF No. 77.
[3] Given that Defendant Courtney Cione filed a separate motion to dismiss, the Court specifically notes that Lewald failed to plead personal involvement as to Cione
[4] Lewald's Fourth Amendment claim for unreasonable search and seizure fails since he does not allege personal involvement by any Defendants in the seizure of his funds, and for the same reasons discussed here, he does not plead supervisory liability for Wellpath or PADOC.

Although Lewald's constitutional claims against Drs. Annino and Baird survive the initial threshold, in order to survive a motion to dismiss he must make out the substantive elements of each constitutional claim. He does not do so. The Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) ("This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."). However, "[w]here a prisoner is receiving some amount of medical treatment, we presume that the treatment is adequate absent evidence that it violates professional standards of care." *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)). Moreover, since "prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners" it is difficult to establish deliberate indifference where the plaintiff has received any treatment at all. *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). "Even if the care is inadequate, mere medical negligence or malpractice is not enough to show deliberate indifference." *Anderson*, 2023 WL 5814664, at *2 (citing *Palakovic*, 854 F.3d at 227).

The facts underlying Lewald's deliberate indifference claim are that he suffered a significant back injury while working in Food Services and was not able to obtain a medical appointment for five days. ECF No. 1 ¶ 133. At his appointment, he was prescribed 600 milligrams of Motrin three times a day, bottom bunk status for six months, and three weeks of no work. *Id.* ¶ 144. On March 3, 2022, Lewald again went to a medical appointment and indicated that he had not received the 600 milligrams of Motrin, but rather only 200 milligrams, which was not effective. *Id.* ¶ 154. Eleven days later, Lewald saw another medical provider, who "stated she would help in

7

any way she could," and "fix[ed] his prescription for 600 milligrams of Motrin, prescribed 10mg of Baclofen, and said she would look into prescribing a medical mattress."[5] *Id.* ¶ 164.

Even drawing all inferences in Lewald's favor, his pleadings only allege that he was prescribed 600 milligrams of Motrin at least twice (as well as other medications), but had difficulty accessing that medication. *Id.* ¶¶ 144, 164. Failing to take medicine that was prescribed does not amount to a claim of deliberate indifference. *See Flowers v. Francoise*, No. 18-13686, 2021 WL 6112285, at *5 (D.N.J. Dec. 27, 2021), *aff'd,* No. 22-1077, 2022 WL 2447899 (3d Cir. July 6, 2022) (granting summary judgment on a deliberate indifference claim where Plaintiff admitted he did not take the medication as prescribed). Lewald saw several medical professionals who prescribed treatment. Even though he requested tests that were not provided, that in itself does not suffice to state a claim of deliberate indifference. *See Anderson*, 2023 WL 5814664, at *4 (finding that denial of a request to see a specialist was only a disagreement with the type of treatment). Lewald's deliberate indifference claim is therefore dismissed.

### ii. EQUAL PROTECTION

Lewald's additional constitutional claims are similarly unavailing. An Equal Protection claim under the Fourteenth Amendment requires demonstrating "the existence of purposeful discrimination." *Shuman*, 422 F.3d at 151. The discrimination must evince "different treatment from that received by other individuals similarly situated." *Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980). Lewald has not alleged that any comparators were treated differently than he was, much less intentionally. In fact, the four Declarations attached to the end

---

[5] Lewald also discusses other medical treatment he received, including a yearly exam, renewed prescription for hyperlipidemia medication, and a blood draw. ECF No. 1 ¶ 228. When his blood results indicated hyperthyroidism, he was sent to get an expanded thyroid panel. *Id.* ¶ 232. He continued to see medical providers who analyzed his lab results and prescribed him medication. *Id.* ¶¶ 240, 244.

of Lewald's Complaint suggest that Lewald was actually treated the same as other inmates. ECF No. 1 at 73-76.

### iii. DUE PROCESS

A plaintiff can make a Due Process claim under the Fourteenth Amendment by alleging that the State deprived him of a protected interest in life, liberty, or property, which are "created and their dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Shuman*, 422 F.3d at 149 (citing *Goss v. Lopez*, 419 U.S. 565, 572-73 (1975) (internal quotation marks and additional citation omitted). Lewald has not pointed to any basis for asserting that he has a protected interest in his work assignment or a particular pay rate, since "inmates have no right to a particular job assignment while they are incarcerated." *Williams v. Fed. Bureau of Prisons and Parole Comm'n*, 85 F. App'x 299, 305 (3d Cir. 2004) (citing *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir. 1989)). Nor has Lewald asserted a property or liberty interest in the work restrictions in his file.

Moreover, Lewald had access to substantial process to redress his grievances. He spoke to several PADOC employees about his concerns (ECF No. 1 ¶¶ 88, 98, 129), filed numerous grievances (*see e.g.*, *id.* ¶¶ 102, 107-08, 115-18, 120), and appealed many denials of those grievances (*id.* ¶¶ 126, 148-49, 156-57, 162, 168-69, 174, 180, 182, 189, 194-95, 209-10, 214, 217). The existence of a prison grievance system provides a post-deprivation remedial process sufficient to pass constitutional muster. *See Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir. 2000). Lewald's Equal Protection claim is dismissed.

### b. RETALIATION

Lewald next alleges that prison officials retaliated against him for filing grievances. In order to state a First Amendment retaliation claim, a plaintiff must show that the conduct leading

9

to the alleged retaliation was constitutionally protected, he suffered adverse action at the hands of the prison officials, and there was a causal link between exercise of constitutional rights and adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Plaintiff has the initial burden to prove that constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. *Id.* The elements for an Americans with Disabilities Act ("ADA") retaliation claim are similar. *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).

According to Lewald's Complaint, the retaliation came in the form of a heavy-duty job assignment and reductions in his pay. ECF No. 1 at 64. However, Lewald has not alleged a sufficient causal connection between his grievances and the alleged retaliation. Most critically, Lewald first filed a grievance *after* his pay reduction and job assignment change had already occurred. Lewald first reports a reduction in pay on December 29, 2021. ECF No. 1 ¶ 88. He received his job assignment in Food Services on January 6, 2022. *Id.* ¶ 93. However, he did not file his first grievance until January 14, 2022. *Id.* ¶ 96. It is illogical for Lewald to claim retaliation when the alleged retaliation took place *before* the adverse action. It is more illogical given that Lewald's grievances were partially successful. On February 25, 2022, just over a month after filing his first grievance and a week after his injury, Lewald was released from his Food Services job. *Id.* ¶ 147. Aside from temporal proximity, Lewald has not alleged any facts suggesting that his pay reduction came as a result of filing further grievances. In fact, prison officials explained to Lewald why his pay had been reduced. *Id.* ¶¶ 184, 205. Prison officials responded to Lewald's requests for information and explained that his pay was reduced when he was on medical leave and no longer working. *Id.* After Lewald had already filed numerous grievances, he was informed that once he was working again, his pay would be increased back to $0.38/hour. *Id.* ¶ 205.

### c. AMERICANS WITH DISABILITIES ACT/REHABILITATION ACT

Lewald also asserts ADA and RA claims. The relevant provision of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity,[6] or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a claim under the ADA, "plaintiffs must demonstrate that: (1) they are qualified individuals; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability." *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023). When the plaintiff is seeking compensatory damages, the "plaintiff must also show intentional discrimination under a deliberate indifference standard." *Id.*

"With limited exceptions, the same legal principles govern ADA and RA claims." *CG v. Pa. Dep't of Edu.*, 734 F.3d 229, 235 (3d Cir. 2013). The RA provides "[n]o otherwise qualified individual with a disability[7] . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To make out a claim under the RA, the Plaintiff has to show the same elements as under the ADA but must also prove that the program in question received federal funding.[8] *CG*, 734 F.3d at 235 n.10. Additionally, there is variation in the causation requirement. Under the ADA, a "but-for causation" is needed, while the RA requires the plaintiff to show that disability is the "sole cause" of the discrimination. *Durham*, 82 F.4th at 226. "Refusing to make reasonable accommodations is tantamount to denying access."

---

[6] The Supreme Court has held that state prisons are considered a "public entity." *United States v. Georgia*, 546 U.S. 151 (2006) (citing *Pa. Dep't of Corrections v. Yesky*, 524 U.S. 206, 2010 (1998)).

[7] The Act defines an individual with a disability as any individual who (1) "has a physical or mental impairment which for such individual constitutes or results in substantial impediment to employment"; (2) "can benefit in terms of an employment outcome from vocational rehabilitation services"; (3) "any person who has a disability as defined in section 3 of the Americans with Disabilities Act of 1990." 29 U.S.C. § 705(20).

[8] Prisons receive federal dollars, so we find this element met.

11

*Id.* To make out a money damages claim, plaintiff must allege intentional discrimination, which requires a showing of deliberate indifference. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019). That showing is made by alleging that (1) Defendant "had knowledge that a federally protected right is substantially likely to be violated," and (2) Defendant "failed to act despite that knowledge." *Id.* at 292.

As a threshold matter, only particular entities are the proper subjects of ADA or RA claims. State officials sued in their individual capacities cannot be sued under Title II of the ADA or the RA. *See Sides v. Wetzel*, No. 2:20-cv-1168, 2021 WL 8017811, at *13 (W.D. Pa. Nov. 2, 2021) (citing *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002); *Matthews v. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015)). Nor can "private corporations" that "contract[] with a public entity to provide some service," since "a private corporation is not a public entity merely because it contracts with a public entity to provide some service." *Matthews*, 613 F. App'x at 170 (internal quotation marks and citations omitted). Additionally, ADA lawsuits against state entities are barred by sovereign immunity, except where a plaintiff successfully alleges constitutional violations. *Durham*, 82 F.4th at 228-29. Last, sovereign immunity does not bar suit against state entities under the Rehabilitation Act. *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 172 (3d Cir. 2002) (quoting *Lane v. Pena*, 518 U.S. 187, 200 (1996) ("The Supreme Court has recognized § 504 [of the Rehabilitation Act] . . . to be 'an unambiguous waiver of the State's Eleventh Amendment immunity.'")).

With this background, all ADA and RA claims against the defendants in their individual capacities are dismissed. The ADA claim against Wellpath is dismissed since Wellpath is precisely the type of private corporation that the Third Circuit deemed an inappropriate subject for a Title II ADA lawsuit in *Matthews*. 613 F. App'x at 170. Lewald does not allege that Wellpath receives

federal funding and Wellpath denies receiving federal funds, and therefore, Lewald's RA claim against Wellpath is misplaced and must be dismissed. *See* ECF No. 41 at 27 n.6. As discussed previously, Lewald does not sufficiently allege any constitutional claims, so his ADA claim against PADOC for money damages must be dismissed as well.

Lewald's ADA claim against PADOC for injunctive relief is not barred for this reason, but is barred because it is moot and no longer a live controversy. A claim is moot where it fails to "present live disputes, ones in which both sides have a personal stake." *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020). When the claim becomes moot as a result of "voluntary cessation of the challenged action," courts are more reluctant to dismiss them. *Id.* at 306-07. However, "we are generally less skeptical of voluntary cessation claims where the change in behavior was unrelated to the relevant litigation." *Clark v. Governor of N.J.*, 53 F.4th 769, 778 (3d Cir. 2022)*; see also Cnty. of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021) ("the voluntary cessation doctrine does not apply here because [the cessation was not] a response to the litigation."). Lewald's Complaint indicates that his work restrictions were eventually restored before he filed the lawsuit. *See* ECF No. 1 ¶ 235. A prison official showed Lewald the restrictions and explained how Lewald can ensure that they are renewed. *Id.* Since the challenged conduct was corrected by prison officials before the lawsuit was filed, there is nothing to enjoin.

Moreover, Lewald's claim for injunctive relief is overly vague about the precise form of injunctive relief he seeks, which is itself sufficient to deny a request for an injunction. *See Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 291 n.11 (3d Cir. 2000) (denying injunctive relief where "appellants' vague assertion that injunctive relief is appropriate in this case, without any further elaboration on that point, is unconvincing."). Especially since Lewald's work restrictions have since been restored in his file, there is no clear form of injunctive relief that can

be ascertained from his Complaint. Nor does Lewald's Response shed any additional light on this issue. *See* ECF No. 96 at 15-19. Because it is not clear what injunctive relief would remain and there is no longer any challenged conduct occurring, Lewald's claims for injunctive relief are dismissed.

Notwithstanding the denial of his ADA claims, there are no bars to Lewald's RA claim against PADOC. On the substantive elements, PADOC does not dispute that Lewald has a disability. ECF No. 86 at 15. However, PADOC asserts that Lewald was not a victim of intentional disability discrimination and that his work assignment falls outside the scope of the RA. *Id.*

Program or activity takes on a broad meaning under the RA and includes "'*all* of the operations of' a state instrumentality." *Furgess*, 933 F.3d at 289 (citing 29 U.S.C. § 794(b)). The meaning of "program or activity" under the RA is "'extremely broad in scope and includes anything a public entity does.'" *Id.* (quoting *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.,* 796 F.3d 293, 301 (3d Cir. 2015)). Therefore, these terms are "all-encompassing." *Furgess*, 933 F.3d at 289 (citing *Yeskey*, 118 F.3d 168, 170 (3d Cir. 1997), *aff'd sub nom.* 524 U.S. 206 (1998)). Moreover, "a prison's refusal to accommodate inmates' disabilities in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constitutes a denial of the benefits of a prison's services, programs, or activities under Title II." *Furgess*, 933 F.3d at 290 (internal quotation marks and citation omitted).

Here, Plaintiff was assigned to work in Food Services, a heavy-duty assignment. ECF No. 1 ¶ 93. The same day he received this assignment, Plaintiff informed numerous officials that he had a disability and could not perform these duties, beginning with his Unit Counselor Jason Stimmel. *Id.* ¶ 94. Lewald then raised the issue with Melissa Delliponti, who worked in Inmate Employment, spoke with Unit Sergeant Mr. Garmin and Unit Corrections Officer Ms. Stubbs, and

filed a grievance. *Id.* ¶¶ 95-96. Upon reporting to work, Lewald explained his disability to Food Services Supervisor Robert Choate, Food Services Instructor Shanda Deshield, and Unit Manager Lisa Durant. ¶¶ 97-98. Lewald then filed two Medical Sick Call Requests resulting in an appointment with Tara Jackson, whom Lewald says did not examine him. ¶¶ 99, 103-04. Over the course of the next few weeks, Lewald continued to file grievances, make Medical Sick Call Requests, and attempt to explain his disability to his supervisors in Food Services. *Id.* ¶¶ 104-32. Viewing Lewald's Complaint in the light most favorable to him, no prison official took any action to address his concerns with performing heavy-duty work. Lewald continued to report to his job in Food Services until he suffered an injury that caused him to "scream[] in pain." *Id.* ¶ 133.

"Refusing to make reasonable accommodations is tantamount to denying access." *Durham*, 82 F.4th at 226. Here, reasonable accommodations were not made for Plaintiff and Plaintiff was effectively forced to work in dangerous conditions given his disability. In *Durham*, the Third Circuit found the causation elements in the RA were met where requests for accommodation were repeatedly refused and complaints of pain ignored which prevented plaintiff from utilizing a service, program, or activity. *Id.*

In *Durham*, the court determined that plaintiff pleaded sufficient facts to demonstrate intentional discrimination under the deliberate indifference standard when the defendants had "knowledge that a federally protected right – his right under the ADA to be free from disability discrimination – was substantially likely to be violated." *Id.* The court noted that plaintiff made prison officials aware that he needed a cane and was in pain without it, and he was continuously denied his cane and accommodations. *Id.* "This alone was sufficient to allege a deliberate indifference claim." *Id.* Similarly, here, Plaintiff repeatedly told various prison officials, medical

providers, and filed grievances regarding his disability and the lack of accommodation.[9] Plaintiff's efforts were sufficient to have provided Defendants with knowledge of his disability and need for accommodation; however, despite this knowledge, there was no action to accommodate Plaintiff's disability. Thus, Plaintiff has sufficiently pleaded an RA claim seeking compensatory damages.

### d. STATE CLAIMS

Because Plaintiff has properly pleaded a federal claim, this Court retains supplemental jurisdiction over Lewald's state law claims. 28 U.S.C. §1367(a). However, each of the state claims are dismissed.

Under Pennsylvania law, "the Commonwealth, its agencies and employees enjoy broad immunity from most state-law tort claims." *Boucher v. Lupacchini*, No. 3:19-CV-2106, 2021 WL 11096471, at *9 (M.D. Pa. Mar. 1, 2021). Officials and employees are entitled to immunity when "acting within their scope of their duties." *Id.* (citing *Moore*, 538 A.2d at 115). An employee's conduct is within the scope of their duties if "it is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer . . ." *Id.* (citations omitted). Pennsylvania law also applies sovereign immunity when the Commonwealth is sued for allegedly inflicting an intentional tort. *See Luck v. Asbury*, No. 3:12-cv-0087, 2013 WL 433536, at *4 (M.D. Pa. Feb. 5, 2013) (collecting cases finding that assault, battery, and intentional infliction of emotional distress were intentional torts barred by sovereign immunity). Pennsylvania also

---

[9] In addition, Plaintiff alleges that prior to his transfer there were restrictions noted in SAPPHIRE including: "no lifting more than 10 pounds, no standing/sitting more than 4 hours, no impact jobs/sports, no jumping/climbing, no excessive bending, bottom-bunk, lite-duty work assignment, no food service-handle/janitor, NOT MEDICALLY CLEARED FOR FOOD SERVICES." *Id.* at ¶ 69. Officials claim they could not access or view this information. However, when Plaintiff met with a records specialist he was quickly able to view Plaintiff's medical record which included a record of his disability and accommodations that Plaintiff received as the previous facility.

statutorily recognizes nine exceptions to sovereign immunity.[10] The only exception relevant to any of Lewald's state claims is for medical-professional liability, which the Court will address separately. Thus, sovereign immunity bars almost all of Plaintiff's tort claims against all Defendants.[11]

To succeed on a claim of medical malpractice, a plaintiff must comply with Pennsylvania Rule of Civil Procedure 1042.3, which requires a Plaintiff bringing a claim of medical malpractice to file a certificate of merit within 60 days after filing the complaint. Pa. R. Civ. P. 1042.3(a). The certificate must attest to the colorable merit of the claim by including one of the following statements:

> (1) that 'an appropriate licensed professional' has supplied a written statement that there is a reasonable probability that the defendant's conduct fell outside acceptable professional standards; (2) that the claim against the defendant is based solely on allegations against other professionals for whom the defendant is responsible; or (3) that expert testimony is unnecessary for prosecution of the claim.

*Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008) (citing Pa. R. Civ. P. 1042.3). Rule 1042.3(a) states that a *pro se* plaintiff must file a certificate of merit. Failure to file the certificate of merit is fatal to the claim unless plaintiff demonstrates that the failure to comply is justified by a "reasonable excuse." *Perez*, 304 F. App'x at 74 (citing *Womer v. Hilliker*, 908 A.2d 269, 279-80 (Pa. 2006)).

Here, Plaintiff submitted two certificates of merit. ECF Nos. 87, 94. However, neither comply with the requirements of the Pennsylvania law. Both certificates are untimely, as they were filed on September 21, 2023 and October 29, 2023, respectively, whereas the Complaint was filed

---

[10] Exceptions include (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody and control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S. § 8522(b).

[11] The claims barred by sovereign immunity include: negligence, neglect of a care dependent person, assault and battery, intentional infliction of emotional distress, embezzlement, misapplication of property, and financial exploitation of a care-dependent person.

on November 11, 2022. *See* ECF Nos. 1, 87, 94. Moreover, neither were written by "an appropriate licensed professional." Pa. R. Civ. P. 1042.3(a)(1). Plaintiff himself wrote and signed both certificates. ECF Nos. 87, 94. Plaintiff has not alleged that he is a licensed medical professional of any kind. Therefore, the certificate of merit requirements are not met and the medical malpractice claim cannot stand.

Finally, Lewald cannot bring claims under the Protection and Advocacy for Mentally Ill Individuals Act ("PAMII") or the Pennsylvania Human Relations Act ("PHRA"). The PAMII does not contain a private right of action, and therefore, Lewald cannot bring a claim under that statute. *See N.A.M.I. v. Essex Cty. Bd. of Freeholders*, 91 F.Supp.2d 781, 787 (D.N.J. 2000) (dismissing complaint "since neither enforceable rights and duties nor a private right of action are created by" the PAMII).

Pennsylvania law requires plaintiffs "to exhaust administrative remedies under the PHRA before filing a civil action." *Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, 537 F.Supp.3d 852, 858 (E.D. Pa. 2020). These administrative remedies require the plaintiff to file a complaint with the Pennsylvania Human Relations Commission (PHRC) (or a similar agency such as the EEOC or Philadelphia Commission on Human Relations). *Id.* Once a plaintiff files with the agency, "the PHRC has exclusive jurisdiction over the claim for one year. . . . A complainant may not file a lawsuit during that period." *Id.* Lewald has alleged in a conclusory fashion that he "exhausted his administrative remedies prior to filing this complaint." ECF No. 1 ¶ 56-A. Under *Twombly*, this is a conclusory assertion that the Court is not required to credit unless supported by plausible factual material. *See Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 554-55) ("[T[he allegations are conclusory and not entitled to be assumed true."). Lewald has not alleged that he filed with the PHRC or an equivalent agency. Circumstantially, the Court notes that the bulk of the allegations

in Lewald's complaint occurred in the first half of 2022, and his complaint was filed in November 2022, making it evidently impossible that Lewald waited for the PHRC's one-year period of exclusive jurisdiction to elapse before filing his complaint. *See generally*, ECF No. 1.

V.   **CONCLUSION**

For the foregoing reasons, Defendant Cione's Motion to Dismiss (ECF Nos. 50, 51) is **GRANTED** in full. The Medical Defendants' Motion to Dismiss (ECF Nos. 40, 41) is **GRANTED** in full. The Commonwealth Defendants' Motion to Dismiss (ECF No. 86) is **GRANTED IN PART AND DENIED IN PART.** The Commonwealth Defendants' Motion (ECF No. 86) is **DENIED** as to Lewald's Rehabilitation Act claim against PADOC; the motion is **GRANTED** as to all other claims against all other defendants.

Aside from Lewald's Rehabilitation Act claim against PADOC, all other claims against all other Defendants are dismissed without prejudice for Lewald to file an Amended Complaint by **January 16, 2024.** If no Amended Complaint is filed by that date, the Court will consider those claims dismissed with prejudice.

All other pending motions filed by Lewald (ECF Nos. 85, 93, 95, and 97) are **DENIED AS MOOT.** An appropriate order follows.

BY THE COURT:

/s/ **Chad F. Kenney**
_____
**CHAD F. KENNEY, JUDGE**