IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TROY LEWALD,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS "PADOC",** | : | |
| *Defendant.* | : | **NO. 22-cv-04625** |

**MEMORANDUM**

**KENNEY, J.**                                                                                           June 3, 2025

    **I.    INTRODUCTION**

Plaintiff Troy Lewald ("Lewald" or "Plaintiff"), proceeding *pro se*, filed a sprawling complaint asserting over a dozen claims against dozens of defendants. ECF No. 1. On November 23, 2023, the Court dismissed all claims except a claim against the Pennsylvania Department of Corrections ("Defendant" or "PADOC") under 29 U.S.C. § 794(a) (the "Rehabilitation Act"). ECF No. 101.

Before the Court is Defendant's Motion for Summary Judgement on the final remaining claim. ECF No. 130. Following the close of discovery, Defendant moved for summary judgement arguing Plaintiff failed to meet his burden of proof as a matter of law under the Rehabilitation Act. ECF No. 130 at 7. Plaintiff filed a response and objections to Defendant's Motion. ECF Nos. 135–36. Plaintiff's claim under the Rehabilitation Act fails as a matter of law because he has failed to provide evidence that his disability was the sole cause of his denial of requested work accommodations or his work placement ("discriminatory action"), discussed below. Accordingly, the Court will grant the Defendant's Motion.

1

## II.  BACKGROUND

Lewald was first incarcerated at SCI-Phoenix in January 2019. ECF No. 1 ¶ 57. Lewald alleges he has a "documented history of atherosclerosis . . . and degenerative disc disease . . . and has been regarded as disabled since his initial commitment the PADOC." ECF No. 1 ¶ 9. Lewald had surgery in 2015 to repair a herniated disc and several discs are on watch for suspected herniation. *Id.*; ECF No. 130-2 at 14:3–4. Lewald's "DC-440 Initial Examination" dated January 25, 2019, states his diagnosis is "chronic back pain" and that he has limited range of motion of his spine. ECF No. 135-1 at 68–71. The Initial Examination includes his past medical history of herniated discs and past surgical history of removing fragments of discs. *Id.* at 70. Lewald does not have any assistive devices on file for his back pain. ECF No. 130-7 at 3.

At various times during Lewald's incarceration, Lewald had medical housing recommendations, activity restrictions, and employment restrictions entered onto his file. ECF No. 1 ¶¶ 58, 67; ECF No. 130-7 at 3. A large tranche of these recommendations and restrictions were entered on May 24, 2019, and included the following employment restrictions: "no food service-handle/janitor," "no high risk of injury," "no intensive labor," and "no lifting." ECF No. 130-7 at 3.

Lewald claims his restrictions were deleted from his file without any notice to him on October 6, 2021. *Id.* ¶ 80. Lewald's "Inmate Medical Status; Restrictions and Other Needs Report" ("Restrictions Report") shows that all his recommendations and restrictions in effect at that time ended on October 6, 2021. ECF No. 130-7 at 2–3. The recommendations and restrictions that ended included his lower bunk housing recommendation; his "no weightlifting" and "non-contact sports only" activity restrictions; and his "no high risk of injury," "no intensive labor," and "no lifting" employment restrictions. *Id.* However, Lewald's "no food service-handle/janitor" employment restriction ended almost a year prior on October 20, 2020. *Id.* at 3. The "Patient Activity

Restrictions History Report" ("Patient History Report") also shows under "Employment Restrictions" that the "no food service-handle/janitor" restriction ended on October 20, 2020. ECF No. 135-2 at 142. The Patient History Report does include two entries of "Not Medically Cleared for Food Service" under "Medical Status Summary" that ended on October 6, 2021. *Id.* at 138.

After time in other facilities, *see* ECF No. 130-2 at 34:9–17, Lewald was transferred back to SCI-Phoenix on December 28, 2021, ECF No. 135 at 15. When returning to SCI-Phoenix, Lewald requested a lite-duty work assignment, specifically a block tutor position, citing his medical restrictions. ECF No. 1 ¶¶ 89, 92; *see* ECF No. 135-1 at 104. However, Lewald was assigned a job in Food Services. *Id.* ¶ 93; *see* ECF No. 135-1 at 119. Lewald attempted to explain to various prison officials that he should not have been assigned a heavy-duty job. ECF No. 1 ¶¶ 94–104; ECF No. 130 at 4 ¶ 4. Lewald filed grievances and inmate requests attempting to resolve the issue. ECF No. 1 ¶¶ 107–118; *see e.g.* ECF No. 135-1 at 119, 135, 145. Lewald raised the issue of his medical restrictions with his supervisor in Food Services. *Id.* ¶ 119; ECF No. 135-1 at 135. Lewald also filed medical sick call requests in an effort to have his medical restrictions reinstated. *Id.* ¶¶ 120–32; *see* ECF No. 135-1 at 129.

On January 25, 2022, Lewald was seen by medical services and raised the issue of restrictions to a Medical Assistant, Ms. Jackson. ECF No. 1 ¶ 104; ECF No. 135-1 at 132–133. Lewald claims the Medical Assistant told him that his file did not have restrictions, did not examine Lewald, and told Lewald it was his responsibility to transfer any previous restrictions from his last institution. ECF No. 1 ¶ 104. Two days later, Lewald wrote to the Superintendent of Centralized Services at SCI-Phoenix seeking assistance in transferring his restrictions. *Id.* ¶ 110. Lewald was seen again by the Medical Assistant on February 15, 2022, when he again raised his concerns. *Id.* ¶ 131; *see* ECF No. 135-1 at 156. On this date, work restrictions were entered on Lewald's file

including "no high risk of injury," "no intensive labor," "no lifting more than 15 pounds," and "no work at heights/elevations." ECF No. 130-7 at 3. No restriction on kitchen work was added. *See id.*

On February 18, 2022, after working in Food Services for approximately one month, Lewald was carrying food trays when he "felt a pop in his back and dropped the stack of trays he was carrying as the pain radiated through his arms, shoulders, and shooting down his sciatic nerve." ECF No. 1 ¶ 133. Lewald requested emergency medical attention, but his supervisor told him to go back to his cell. *Id.* Once back at his cell, Lewald informed a corrections officer and his unit manager of his injury. *Id.* Neither sent Lewald to receive emergency medical care since it did not "look like an emergency" and both informed him that he would have to file a sick call. *Id.* That day, Lewald filed a sick call, *id.* ¶ 136, and filed multiple inmate requests and grievances, *id.* ¶¶ 134–138; *see* ECF No. 135-1 at 147, 149, 158.

Five days later, Lewald was seen by a prison medical official who examined him and prescribed him 600 milligrams of Motrin three times a day, bottom bunk status for six months, and three weeks of no work. ECF No. 1 ¶ 144; ECF No. 130-4. Lewald was then released from his Food Services job. ECF No. 1 ¶ 147; ECF No. 135-1 at 170.

After this incident, Lewald filed a DC-ADM 006 Reasonable Accommodations for Inmates with Disabilities form for supplemental bedding in April of 2022. ECF No. 130-2 at 17:7–19:17. At no other time did he complete this form. *Id.* Since the incident, Lewald has continued to file grievances, requests to staff members, and sick call requests regarding his pay, work assignments, and other complaints. *See generally* ECF No. 130-1 at 175–130-2 at 220.

Lewald filed his Complaint in this Court on November 16, 2022. ECF No. 1. The Court dismissed all claims except Lewald's Rehabilitation Act claim against the Defendant. ECF Nos.

4

100, 101. After the close of discovery, Defendant filed a Motion for Summary Judgment. ECF No. 130. Defendant's Motion included a recitation of material facts as well as a transcript of the deposition of Troy Lewald, Lewald's work assignments, Lewald's "DC-472 Progress Note Medical Provider" dated February 23, 2022, Lewald's Restriction Report, and copies of inmate handbooks and forms. ECF No. 130 at 1–3; ECF Nos. 130-2–130-8. Plaintiff's "Motion in Opposition to Motion for Summary Judgment" (ECF No. 135, "Response"), provides various handbooks and policies, *see* ECF 135-1 at 1–63, a more complete collection of his medical file before and after the incident, *see e.g. id.* at 68–102, 105–115, 131–133, copies of many of his requests and grievances before and after the incident, *see e.g. id.* at 104, 119, 135, 145, 218, among other documents, *see generally* ECF No. 135.

### III.    STANDARD OF REVIEW

A court may enter summary judgement when there exists "no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. 56(a). A court must "examine the evidence of record in the light most favorable to the party opposing summary judgement and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the non-movant must not "rely merely upon bare assertions, conclusory allegations, or suspicions." *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-movant "must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

The initial burden is on the movant for summary judgment to show the absence of a genuine issue of material fact. "'[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving

5

party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir.2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). The plaintiff "must point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (citing *Celotex*, 477 U.S. at 322). The "[plaintiff] must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249.

## IV.     DISCUSSION

The Rehabilitation Act provides "[n]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a)*.* Therefore, Lewald must demonstrate that the program in question received federal dollars and: (1) he is a qualified individual; (2) with a disability; (3) was excluded from participation in or denied the benefits of a program or activity of a public entity, or discriminated against by that entity; (4) by reason of his disability. *See id.*; *Durham v. Kelley*, 82 F. 4th 217, 225 (3d Cir. 2023). Finally, "refusing to make reasonable accommodations is tantamount to denying access." *Id.* at 226*.*

"Congress has directed the courts to construe the [Americans with Disabilities Act ("ADA")] and the Rehabilitation Act such that conflicting standards do not arise, *see Bragdon v. Abbott,* 524 U.S. 624 (1998), [but] the ADA and the Rehabilitation Act are not exactly the same."

*New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 n.4 (3d Cir. 2007). The causation element of the Rehabilitation Act and the ADA differ. *Durham,* 82 F. 4th at 226. The Rehabilitation Act requires that discriminatory action be "**solely** by reason of her or his disability." 29 U.S.C. § 794(a) (emphasis added). The ADA, by contrast, only requires that it be "by reason of such disability." 42 U.S.C. § 12132. An alternative cause of why a plaintiff was treated differently is fatal to a claim under the Rehabilitation Act "because disability would no longer be the sole cause." *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013).

Here, the requirement that PADOC receive federal funds and the first two elements of a Rehabilitation Act claim are met or not disputed for the purposes of this Motion. The Court previously found that the state prison receives federal dollars, *Id.* at 11 n.8, and that Plaintiff's work assignment qualifies as a "program or activity" within the meaning of the Rehabilitation Act, ECF No. 100 at 14. Defendant does not dispute that Plaintiff is a qualified individual with a disability for the purposes of this Motion. ECF No. 130 at 8.

The third element—that Lewald was excluded from participation in or denied the benefits of a program or activity of a public entity, or discriminated against by that entity—is disputed by the Defendant. Lewald alleges he was denied his requested work accommodation and was placed in an inappropriate work assignment which led to an accident at work. ECF No. 1 ¶ 88–133 The incident at issue involved a "pop" in his back, and Plaintiff was subsequently released from food services. ECF No. 1 ¶ 133; ECF No. 135-1 at 170. Here, Lewald is using the Rehabilitation Act to *avoid* a work assignment rather than the Defendant excluding him from work—the focus of the Rehabilitation Act. In addition, Plaintiff did not seek or want a reasonable accommodation to work the food services role he was assigned; rather, he only wanted to work as a block tutor. Defendant describes its behavior as only "alleged non-responsiveness" but provides little argument on this

7

element. *See* ECF No. 130 at 8-9. The Court need not focus on the disputes of this element since the causation requirement of the fourth element is dispositive.

The fourth element is clearly not met. Plaintiff has failed to allege or provide evidence that his disability was the **sole cause** of his denial of work accommodations and his work placement, as discussed below. Since Plaintiff has failed to provide evidence of the sole cause requirement, no trier of fact could find a violation of the Rehabilitation Act. Accordingly, the Court will grant PADOC's Motion for Summary Judgment.

### A. Lewald's burden as Plaintiff

As Plaintiff, Lewald must make out a prima facie case of discrimination and bears the burden of demonstrating the elements a Rehabilitation Act claim. *See e.g. Shiring v. Runyon,* 90 F.3d 827, 831 (3d Cir. 1996). Lewald "must point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti,* 71 F.3d at 484. Lewald must provide evidence that his disability is the sole cause of the discriminatory action.

Defendant in its Motion points to Plaintiff's filings and argues that he has not "alleged or remotely inferred, that he was denied his requested work accommodation because of his disability." *Id.* at 6. "At most, Lewald has alleged that there was an oversight within PADOC for not notifying Lewald that his work restriction expired in 2020 or for not automatically implementing his improperly requested employment restriction." *Id.* Defendant highlights that Plaintiff Lewald failed to comply with PADOC policy by not requesting a disability accommodation through the proper procedure. ECF No. 130 at 6–7. Additionally, Defendant points to Lewald's deposition, arguing it shows Lewald believed his Food Service placement was not motivated by his disability, but was "either random or out of convenience, but not because of his disability." *Id.* at 7.

The Court agrees that Plaintiff has not provided evidence to show his disability was the sole cause of the discriminatory action, as required by the Rehabilitation Act. Since PADOC pointed to the absence of evidence to support an element of a Rehabilitation Act claim, Lewald "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record…; or (B) showing that the materials [the movant] cited do not establish the absence…of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

### B. The record does not show that Lewald's disability was the sole cause of the discriminatory action

Plaintiff's Complaint does not allege that his disability was the sole cause of the alleged discriminatory action, as required by the fourth element of the Rehabilitation Act. Since Plaintiff is proceeding *pro se*, the Court will construe his pleadings liberally and look to the record to see if there is evidence that his disability was the sole cause of the alleged discriminatory action by PADOC. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that "[a] document filed *pro se* is to be liberally construed") (citation and quotation marks omitted).

Lewald filed a response and objections to the Motion.[1] ECF Nos. 135, 136. In his Response, Lewald provides manuals, medical records, transfer records, inmate requests, inmate grievances,

---

[1] Lewald objects to the inclusion of ECF No 130-7 (Exhibit 6) in the record. *See* ECF No. 136. Rule 56(c)(2) provides that a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).
  Exhibit 6 is a printout of Plaintiff's Restrictions Report that describes Plaintiff's medical clearance, housing recommendations, activity restrictions, employment restrictions, and assistive devices. *See* ECF No. 130-7. The Restrictions Report can be presented in a form that is admissible as a Business Record under Federal Rule of Evidence ("FRE") 803(6) and can easily be authenticated under FRE 901. The Restrictions Report, a summary of the employment restrictions Lewald had on his file leading up to the incident, is highly relevant and not unduly prejudicial, confusing or misleading under FRE 403.
  Lewald argues his Patient History Report, ECF No. 135-2 at 137-144, should be used instead as the "best evidence," ECF No. 136 ¶ 7. FRE 1002, sometimes called the "best evidence rule," is a narrow mandate to produce the original document. *United States v. Miller*, 248 F. App'x 426, 429 (3d Cir. 2007). Lewald does not object to the Report being a copy but rather that he would prefer the Patient History Report be used instead. ECF No. 136 ¶ 7.
  Since the Restrictions Report can be presented in a form that would be admissible at trial and it is relevant and not unduly prejudicial, the Restrictions Report can be used at this stage. Further, the Patient Restrictions Report—the document Lewald argues should be used instead, also shows that his "No food service-handle/janitor" employment restriction ended on October 20, 2020, discussed above in Section II. Background. ECF No. 135-2 at 142. The Patient

and other documents from the time leading up to his transfer to SCI-Phoenix, his time at SCI-Phoenix prior to the incident, the incident itself, and his treatment thereafter.[2] *See* ECF No. 135. None of the restriction reports, medical records, conversations with staff, or documents submitted to the Defendant on the record show that his disability was the sole cause of the denial of his requested work accommodation or work placement. A trier of fact could not find that Lewald is entitled to relief under the Rehabilitation Act because he has not put forward evidence to meet the "sole cause" requirement of the Rehabilitation Act. The Court discusses the record below, focusing first on the documents prepared by others and then to the efforts taken by Lewald to resolve his accommodations in the form of conversations and written submissions.

> **1. The restrictions reports and medical records do not show that Lewald's disability was the sole cause of the alleged discriminatory action**

Lewald's Response includes his Patient History Report and a more complete medical record than provided in the Motion. *See* ECF No. 135-1, 135-2. These documents do not provide the evidence required to meet the sole cause element of the Rehabilitation Act.

Both the Restrictions Report, provided by the Defendant, and Patient History Report, provided by Plaintiff, show that all Lewald's employment restrictions ended on October 6, 2021, or before. ECF No. 130-7; ECF No. 135-2 at 142. The Restrictions Report and the Patient History Report both show that the "no food service-handle/janitor" employment restriction ended on

---

History Report is susceptible to the same authenticity and hearsay concerns Plaintiff articulates for the Restrictions Report but similarly can also be presented in a form that would be admissible.

[2] Lewald argues that his discovery requests have been left unanswered and summary judgment is inappropriate. ECF No. 135 at 28. Lewald includes letters exchanged between him and attorneys for Defendant discussing the extensive discovery between the parties. *See* ECF No. 135 at 226–230. Discovery closed on October 24, 2024, and motions related to discovery disputes were due by October 10, 2024. ECF No. 124. Plaintiff did not file a motion to compel discovery even though his letters as well as prior filings on the docket show he was aware of his ability to file discovery motions. *See* ECF No. 135-2 at 229 ("I would prefer to obtain discovery responses without the necessity of filing a Motion with the Court."); ECF No. 117 ("Plaintiff's Motion for Permission to Engage in Discovery"). Plaintiff cannot shield himself with arguments that his discovery requests were left unanswered at this stage since the deadline for discovery motions ended four months before the Motion for Summary Judgment was filed. *See* ECF Nos. 124, 130.

October 20, 2020. ECF No. 130-7 at 2–3; ECF No. 135-2 at 138–144. The Patient History Report does have two entries under "Medical Status Summary" of "Not Medically Cleared for Food Service" with the stop date of October 6, 2021. ECF No. 135-2 at 138. These entries are under Lewald's "Medical Status Summary" and do not appear on his Restrictions Report. *Compare* ECF No. 130-7 at 2–3 *with* ECF No. 135-2 at 138.

Regardless of whether the Court looks at the Restrictions Report or the Patient History Report, the "no food service-handle/janitor" employment restriction ended on October 20, 2020. Even looking to the broader "Medical Status Summary" of the Patient History Report, the "Not Medically Cleared for Food Services" restriction ended with the other restrictions on October 6, 2021. ECF No. 135-2 at 138. Plaintiff's own Complaint describes the removal of these restrictions as an "action taken within the electronic processing system to prepare for Plaintiff to transfer, [that] deleted all medical work restrictions." ECF No. 1 ¶ 80. Plaintiff does not allege that his disability was the sole reason these restrictions were removed from his file, nor is it supported by the documents themselves. At most, Plaintiff alleges in the heading of his Complaint the removal was due to negligence. *See id.* ¶ 80–85.

Plaintiff also alleges in his Complaint that the lack of the restrictions on his medical transfer forms was negligent. *See id.* ¶ 86–87. However, these forms accurately reflect that there were no restrictions on Lewald's file at the time they were completed. The screening conducted for his 2021 transfer to SCI-Phoenix, along with its accompanying "DC-491 Intra System Nursing Transfer Checklist" dated December 22, 2021, only describe Lewald as having "pain, low back" under his Chronic Medical Problems. *See* ECF No. 135-1 at 114–15. Lewald's "DC-472N Reception Progress Note" and "DC-472 Progress Note Medical Provider" dated December 29, 2021, indicate "No" for "Physical Disabilities/Limitation" or "Any Special

11

Requirements/Restrictions (i.e. Bottom Bunk, Detox if not in Infirmary)." ECF No. 135-1 at 106–10, 112–13. The lack of restrictions on these transfer forms reflects that there were no restrictions on his file.

Both restrictions reports and the medical records provide no evidence Lewald's disability was the sole cause of the discriminatory action.

### 2. Lewald's conversations with Defendant's staff do not show that his disability was the sole cause of the discriminatory action

Plaintiff states "[he] must have spoke[n] with at least 20 people" while trying resolve his employment restrictions. ECF No. 130-2 at 16:14–15. These conversations with Defendant's employees as alleged in the Complaint and in the record do not show that Plaintiff's disability was the sole cause of a discriminatory action.

Plaintiff's Complaint alleges he had various conversations with PADOC staff where he discussed his heavy-duty work assignment and lack of employment restrictions. *See* ECF No. 1 ¶¶ 88–132. Plaintiff's descriptions of the conversations do not show his disability was the sole cause the discriminatory action. Lewald's allegations themselves provide alternative reasons for the lack of restrictions and his work assignment. For example, he alleges staff did not know what to do when he asked them for assistance, *id.* ¶ 94 ("[W]hat do you want ME to do?"), told Lewald his requests were beyond the scope of their employment, *id.* ¶ 94 ("I'm not doing that, that's not my job"); *see also* ¶ 104 ("I'm not a records specialist and I can't help you."), or would "look into it" and find no restrictions on the file, *id.* ¶¶ 97, 119. Plaintiff also describes two uncomfortable encounters with Ms. Jackson in which he was told there was no record of his disability in the file and would need to request a transfer of the file from his previous facility. *Id.* ¶¶ 104, 131. The Complaint does not allege that his disability was the sole cause of a discriminatory action.

Where conversations do appear on the record rather than solely as allegations in the Complaint, the conversations do not show that his disability was the sole cause of a discriminatory action. Plaintiff's deposition recounts his conversation with Ms. Jackson where he was told to reach out to his previous facility to transfer his restrictions, ECF No. 130-2 at 15:10–24, along with conversations with other staff, *id.* 16:9–15. Like the allegations in the Complaint, none of these conversations in the record provide evidence that his disability was the sole cause of a discriminatory action.

### 3. Lewald's written requests, grievances, and other documents do not show that his disability was the sole cause of the discriminatory action

From his transfer to SCI-Phoenix on December 28, 2021, until the incident on February 18, 2022, Lewald also attempted to resolve his lack of restrictions by submitting numerous "DC-135A Inmate's Request to Staff Member" forms, "DC-804 Official Inmate Grievance" forms, sick calls, and letters to individuals in positions of authority. *See e.g.* ECF No. 135-1 at 103–4, 117–158. Plaintiff attaches many of these documents, which include responses from employees of the Defendant, as exhibits to his Response. *See id.* These documents similarly do not provide evidence to meet the "sole cause" requirement of a Rehabilitation Act claim. Rather, the documents show PADOC employees tried to explain prison policies to Plaintiff and that his file had no work restrictions when they checked the file.

Lewald's early requests show staff members describing the policies for job placement. On December 29, 2021, Lewald filed a written request to Inmate Employment requesting placement as a block tutor. ECF No. 135-1 at 104. The staff response laid out the policy of placing all transferees in GLP until a work assignment is made and that Lewald should write to the Educational Principal to be considered for the role of block tutor. *Id.* Then on January 13, 2022,

Lewald filed a written request to the Correctional Education and Vocational Coordinator at SCI-Phoenix, asking to be re-assigned to a different work assignment at a higher pay. ECF No. 135-1 at 117. The staff response states "Per policy, you can be placed in any job regardless of pay offered. If you refuse you are placed without pay and lose your payrate. If EDUC hires you you will change jobs." *Id.*

Staff members also explained that he had no restrictions on file. On January 14, 2022, Lewald filed a grievance describing the actions he had taken to date to be assigned to a block tutor role and how his work in the kitchen would be a demotion from his previous employment. ECF No. 135-1 at 119. The Grievance Officer denied his grievance on January 31, 2022, stating "I checked the CAPTOR system and you currently do not have any medical restrictions or limitations that you refer to in this grievance." *Id.* at 120.[3]

On February 7, 2022, Lewald filed another inmate request form asking for assistance in getting his medical restrictions re-instated. ECF No. 135-1 at 145. Restrictions were added to his file, although not all the restrictions Lewald wanted. Employment restrictions appear on the Restrictions Report starting on February 15, 2022: "no high risk of injury," "no intensive labor," "no lifting more than 15 pounds," and "no work at heights/elevations."[4] ECF No. 130-7 at 3. No restriction for food service work was added. *See id.*

---

[3] Responses from staff after the incident provide similar reasons for denying Lewald's grievances. *See e.g.* ECF No. 135-1 at 136 ("I looked at your restrictions and the employment restrictions lasted from 5/24/19 until 10/6/21 only."); *id.* at 139 ("As of 10/7/2021, any/all restrictions that you had, had expired. As such, you were placed on GLP on 12/29/2021 and in Food Services on 1/17/2021[sic]. . . you had no active restrictions."); *id.* at 143 ("[Y]ou had no work restrictions in place. . .").

[4] Lewald's counters in his Response that pursuant to DC-ADM 006 "any observing staff member can make a request for accommodation on behalf of an inmate." ECF No. 135 at 35. Restrictions were in fact added to file after making a request to a staff member. ECF No. 135-1 at 145. Lewald's argument in his Response still does not show that his disability was the sole cause of a discriminatory action. The record shows multiple staff members checked his file for restrictions and proceeded accordingly. Again, the evidence on the record shows at most that any alleged discriminatory action was due to inadvertence or ignorance, not solely based on his disability.

14

The responses to Lewald's requests and grievances show many reasons for his work placement. Lewald himself also provides an additional reason for the alleged discriminatory action. On February 7, 2022, Lewald sent a letter to the Superintendent of SCI-Phoenix requesting that "you or your office [ ] contact SCI-Albion to confirm my averment(s) as perhaps that Facility will confirm what has been (inadvertently) omitted from the CAPTOR system." ECF No. 135-1 at 121-22. Plaintiff's own letter states inadvertence is the reason for the lack of restrictions, not discrimination based on his disability.

Nowhere in the record, or even the allegations in the Complaint, does Plaintiff show his disability was the sole cause of his lack of work restrictions or his work placement. At most, Plaintiff has shown that his work restrictions may have been inadvertently removed. Inadvertence is not sufficient as a matter of law to meet the "sole cause" requirement of the Rehabilitation Act.[5]

### V.  CONCLUSION

Plaintiff does not allege nor has he provided evidence that his disability was the sole cause of his denial of requested work accommodations or his work placement. Accordingly, the Court grants Defendant's Motion for Summary Judgement on the final Rehabilitation Act claim under 29 U.S.C. § 794(a). An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

_____
**CHAD F. KENNEY, JUDGE**

---

[5] Since Plaintiff has not provided sufficient facts to meet the Rehabilitation Act's causation requirement, deliberate indifference required to recover compensatory damages is not discussed.